## Case No. 3,597.

### The DAVID PRATT.

[1 Ware (495) 509.][1]

District Court, D. Maine. April 10, 1839.

ADMIRALTY PRACTICE—FAILURE TO PLEAD—IGNORANCE AN EXCUSE — INTERROGATORIES — EVIDENCE—SEAMEN'S WAGES—RELEASE—ADVANCES CHARGED ON SHIPPING ARTICLES.

1. Before the defendant can be heard in his defence or introduce evidence in the cause, he must appear and contest the suit either by exceptions to the libel, or by answering it. If he does neither, the court will hear and adjudge the cause ex parte upon the evidence offered by the libellant.

2. But when it appears the defendant has neglected to put in an answer through ignorance of the practice of the court, and is at the time of the hearing absent, the court is not precluded from receiving any evidence which his counsel may offer as amicus curiae.

---

[1] [Reported by Hon. Ashur Ware, District Judge.]

3. Each party in the admiralty has a right to require the personal answers of the other under oath to any interrogatories touching the matter in issue.

[Cited in Jay v. Almy, Case No. 7,236; The Edwin Baxter, 32 Fed. 296.]

4. If the defendant refuses to answer any interrogatory propounded by order of the court, the charge in the libel to which the interrogatory relates will be taken pro confesso. The answers to such special interrogatories are evidence in the cause, as well in favor as against the party answering.

5. An acquittance and release under seal, executed by a seaman on the payment of his wages, does not in the admiralty operate as an estoppel, but is treated as a common receipt. It is prima facie, but not conclusive proof of payment.

[Applied in Leak v. Isaacson, Case No. 8,160. Cited in Dray v. The Rajah, Id. 11,538; Savin v. The Juno, Id. 12,390.]

6. The charges made on the shipping papers of advances to the seamen in the course of the voyage are not evidence until verified by the suppletory oath of the master.

[7. Cited in Jordan v. Williams, Case No. 7,528, to the point that a master cannot lawfully imprison a seaman on shore unless he be unable to restrain him on board.]

This case was formerly before the court and was argued on an exception to the libel in the nature of a demurrer. In its original form the libel united a cause of damage for an assault and battery and imprisonment, with a cause of substraction of wages. The ground of exception was that the libel was multifarious, embracing distinct and independent causes of action, which could not be united in the same proceedings. The exception was allowed, and the libel was amended by striking out the allegation founded on the tort [Pratt v. Thomas, Case No. 11,377], and it now stands as a simple suit for wages. No answer was made to the amended libel, but on motion of the proctor, who appeared for the defendant at the former hearing, he was allowed to intervene for the defence as amicus curiae. The shipping paper was produced, from which it appeared that the libellant shipped at Wilmington, in North Carolina, May 22, 1837, for a voyage to St. Thomas, and thence to one or two ports in the West Indies, and thence to her port of discharge in the United States, and thence to Portland, for wages at the rate of fourteen dollars a month. The voyage was performed and the crew discharged August 15th. The libellant claimed a balance due of $27; the defence was that the whole amount of wages had been paid.

Codman & Fox, for libellant.

C. S. Daveis, for defendant.

WARE, District Judge. This case has come on to a hearing under unusual circumstances. Though it has been standing nearly a year and a half on the docket since it was heard upon the exception, and the libel amended, no answer has been put in by the defendant to the amended libel. According to the regular and established rules of practice in the admiralty, before the defendant can be heard in his defence, or make use of any of his proofs, he must enter his appearance and contest the suit either by filing exceptions or answering the libel. For until this is done no issue is formed, and the court cannot see what is in controversy between the parties. In every court exercising a contentious jurisdiction the evidence must be confined to the issue, or the matters in dispute. Each party must lay the foundation for the admission of his proofs by suitable allegations in his pleadings. The defendant having in this case neither excepted to the amended libel nor answered it, has put nothing on the record to which his proof can apply. And further, by the practice of the admiralty each party has a right to extract evidence in support of his case from the personal answers of his adversary. Besides the general answer of the defendant in which the libel is contested, the libellant has a right to require him to answer at the hearing any special interrogatories which he may put touching the matters in issue. Clerke, Praxis Adm. tit. 14; 2 Brown, Civ. & Adm. Law, 416; Gammel v. Skinner [Case No. 5,210]. Several of the printed rules of this court are intended to enforce this right. By the 8th rule, if after the return of the warrant executed, the defendant does not appear, or if after appearing he absents himself, he shall be deemed to be in default and contumacy, and the court will proceed to hear the cause ex parte. By the 20th rule, if the defendant refuses to answer such interrogatories as shall be propounded to him by order of the court, the allegations in the libel to which the interrogatories relate, and which the libellant expects to support by his answers, shall be taken pro confesso, and the court will hear and adjudge the cause ex parte, unless the libellant elects to proceed by attachment to compel an answer. Clerke, Praxis Adm. art. 24. This cause should, therefore, according to the ordinary and regular course of the court, be heard upon the evidence produced upon the part of the libellant only. The defendant has no legal standing in court. He has neither contested the libel affirmatively nor negatively; he has neither denied the allegations of the libel, nor confessed and avoided them; and has therefore laid no foundation for the admission of any evidence. But it is suggested by the counsel who appeared for the defendant and argued the exceptions to the libel, that he since that time had no opportunity of communicating with his client, that he is most of the time absent at sea, is unacquainted with the course of proceeding in this court, and ignorant of the necessity he is under of putting in a personal answer to the libel. Now although the course of the court is the law of the court, I have no doubt of its authority to waive its own rules, which are established for promoting the cause of justice, so far that

they shall not operate as a surprise upon the ignorance of a party and debar him from making a just and conscientious defence. If the court cannot consistently with its rules admit the counsel to intervene for the defence as the regular proctor of the defendant, it may so far dispense with them as to hear any suggestions he may make, or receive any proper evidence he may offer in the interest of justice as amicus curiae. But in receiving evidence in this irregular way it is to be borne in mind that the defendant has made no answer to the allegations in the libel, and the libellant has had no opportunity to try his conscience by any interrogatories touching the matter complained of.

The evidence then which is offered in support of the defence is a receipt and release under seal. This instrument, which is signed and sealed by all the crew, is attached to the back of the shipping papers by wafers and is in the following terms: "We the undersigned late mariners on board the schooner called the David Pratt, of North Yarmouth, on her late voyage described on the other side of this instrument, and now performed to this place of payment, do each for ourselves with our signatures and seals acknowledge to have received of Timothy Pratt, agent or owner of said schooner David Pratt, the full sum hereunto set against our respective names, it being in full for our services as wages on board said vessel, and in consideration whereof and of one cent to each of us paid, we have released and do hereby release and discharge forever the master, officers, and owners of said vessel, and each of them of and from all suits, claims, and demands for assaults and battery, and imprisonment, and every other matter and thing of whatever name or nature against said schooner David Pratt, the master, owners, and officers, to the day of this date hereunto set against our names." This instrument appears to have been regularly executed by the libellant, and the execution is attested by a subscribing witness. No objection was made to it, though it could not have been received, if the objection had been taken, without calling the subscribing witness. The controversy has been upon its effect and operation. It is without question prima facie proof of payment. If it were a receipt in the common form without a seal, it would be nothing more. It would be no conclusive bar to a suit for the balance of wages, if it were made to appear that they were not paid or otherwise satisfied. Harden v. Gordon [Case No. 6,047]; Thomas v. Lane [Id. 13,902]. A receipt in full is not conclusive at common law, but is always open to explanation by every kind of legal evidence.

Ought this receipt between the present parties to have any greater effect, or be any further conclusive on the rights of the libellant in consequence of having a seal annexed to it? The common law does, it is true, attribute to an acquittance under seal a greater degree of sanctity, and holds it to be a higher kind of evidence than a mere naked acknowledgment of satisfaction in writing, such as is ordinarily given in the common transaction of business upon the payment of a debt. Co. Litt. 352, and Steele v. Adams, 1 Greenl. 1. Usually a party will be estopped from contradicting by parol evidence the terms of his own deed. But whatever effect a court of common law might feel itself compelled to give to an instrument of this kind, it will not follow that a court of admiralty will be precluded from looking into the consideration for which it was given, merely because it is sealed. A court of admiralty is, as to all matters falling within its jurisdiction, a court of equity. Its hands are not tied up by the rigid and technical rules of the common law, but it administers justice upon the large and liberal principles of courts which exercise a general equity jurisdiction. Brown v. Lull [Case No. 2,018]; The Fortitudo, 2 Dod. 58; The Cognac, 2 Hagg. Adm. 377. It is particularly fit that it should be free from the artificial and technical rules of the common law in dealing with contracts between seamen and ship-owners. They are parties who do not stand, in making their contracts, on even ground. Merchants are shrewd, careful, familiar with the forms of business, watchful and far-sighted in providing for their own interests; while seamen are ignorant, improvident, and necessitous, a most useful and necessary class of persons to a maritime and commercial people both in peace and war, gallant and fearless of personal danger, but wholly unable to defend their rights against the superior knowledge, sagacity, and wealth of their employers. They are therefore wisely, upon principles of public policy, as well as private justice, placed under the protection of the law. They are permitted to sue in forma pauperis because if they were not allowed to come into court in this way, but were required to find security for costs, like other parties, it would amount to a practical denial of justice. Their contracts with ship-owners are narrowly watched, and if any unusual stipulations are introduced, departing from the usual terms of the contract and renouncing any advantages which are secured to them by the general principles of the maritime law, they will be set aside unless they are reasonable in themselves and founded on an adequate consideration. The Juliana, 2 Dod. 504; Harden v. Gordon [supra]; The Minerva, 1 Hagg. Adm. 347. If the shield of the law were not thus interposed to protect them from the consequences of their own improvidence, they would be liable from their carelessness, ignorance, and destitution to constant imposition. In the present case the owners who provided this form of a receipt did it, as may fairly be presumed, with a full understanding of the difference in the legal effect of an acquittance and release under seal, from that of a simple discharge by parol, or in writing not under seal. They have

taken care, therefore, to add to it, for a nominal consideration of one cent, a release for all assaults, batteries, and imprisonments, and every other thing. And they may have congratulated themselves in the belief that they had thus, for the paltry sum of five dollars, set up a perpetual bar to any claim which this seaman may have had, however meritorious it might be. But is it to be presumed that this ignorant and uneducated mariner, (for he could not write his name, and he signed both the shipping paper and the release by his mark,) is this court bound to presume that he executed this instrument with a full knowledge of the doctrines of the common law, in regard to estoppels? It would be a presumption directly against fact, for the first thing he did after executing this instrument was to apply to the laws of his country for redress of these very injuries which he had released. There is quite as much reason for holding a settlement and acquittance, after the wages are earned, open to the equitable consideration of the court, as the terms of the contract itself. The same reasons apply with equal, and some of them with augmented force. Seamen are not a class of men who ordinarily make provision against the future. On their return from a voyage they are usually dependent on their wages for present support, and if they are withheld they ordinarily find themselves in a state of entire destitution, not only without present means to provide for their immediate and most pressing necessities, but without credit. If their employers choose to impose upon them hard terms, they are obliged to take what is offered them to meet their immediate wants or forthwith to re-ship in another vessel. They are thus placed too much in the power of the owners to be able to negotiate with them on equal terms. If the owners choose to make use of that power to drive a hard bargain, and compel seamen to a settlement on unjust terms, both public policy and private justice require that such settlements should be open to a re-examination, so that the men should not be deprived of a just remuneration for their services. A receipt, or release of a seaman, I hold to be no bar in the admiralty to a suit for his wages, with whatever parade of seals and attesting witnesses it may be surrounded, provided it is proved that they have not been paid or otherwise satisfied.

If the libellant is not precluded from proving the truth of the case, let us see what evidence is produced to overcome the receipt, as this is beyond doubt proof of payment, until it is falsified either by positive proof or strong and reasonable presumptions. The libel alleges that at the time of the discharge but five dollars were paid for the whole balance of wages due; that deductions were made from the wages, which are not authorized by law; and that a balance of twenty-seven dollars now remains due and unpaid. Two witnesses have been examined in support of this allegation in the libel. The deposition of the first, Orcutt, was taken to support the libel in its original form, and relates principally to that part which has been stricken out. He merely says, at the close of his deposition, that only five dollars was paid Thomas at the time of his discharge, without mentioning any circumstances relating to the payment. The other witness, Adams, whose deposition was taken after the libel was amended, states the same fact and adds, that he was not in the cabin when Thomas was paid, but was within hearing where he could see the master and Thomas through the skylight; that he saw the master give Thomas a five dollar bill, that he heard him say that nothing was due to him after deducting prison expenses and other charges, but that he would make him a present of five dollars. Thomas complained and was dissatisfied; but the master told him, in language not fit to be here repeated, that this was all he would give him, and he might sue if he pleased. The witness saw the bill when Thomas came out of the cabin.

It is said that this is loose and uncertain testimony to control a written and formal receipt. It undoubtedly is so. It is, however, precise and distinct as to the amount paid at that time. It is also distinct to the fact that the master insisted on deducting certain charges for prison expenses, board, and lost time, though the amount is not stated. And in confirmation of the fact that deductions were made for prison expenses, it is to be observed that the libel in its original form particularly set forth an imprisonment at St. Thomas, by order of the master, and claimed damages for the wrong, and the imprisonment is fully proved by the witnesses. Expenses must have been incurred, and it is a fact which has so often been brought to the knowledge of this court, that masters are in the habit of deducting these expenses from wages, that it is not easy to forget it. And I think it can hardly be the duty of the court to be judicially blind to a practice, which is familiarly known to all persons conversant with the usages of owners and masters in their settlements with seamen, and to none better known than to the court itself. This practice cannot indeed be referred to as proof that the deductions were made in this particular case, but it at least adds something, if any thing were wanted, to the credibility of the testimony. If a master imprisons his seamen in a foreign gaol, he always does it at the risk of being called upon to answer for it on his return home. His right to punish his men in that way, except in cases of aggravated misconduct and insubordination, is, to say the least, questionable; and if he does resort to it he is never permitted to charge the expenses upon the men, nor deduct their wages during the time of the imprisonment. Brown v. The Nimrod [Case No. 17,959]; Magee v. The Moss [Id. 8,944]. So is the law,

and the evidence satisfactorily proves that deductions of this kind were made from the libellant's wages. If the evidence is not more full and precise, the fault is not wholly with him. The master took care to have an attesting witness to the receipt. That witness, if he had been produced, and it belonged to the master to produce him, could have stated the facts with precision. Nor is this all. The libellant is entitled to extract evidence from the personal answers of the master to such interrogatories as he may choose to propound. Now I observe that there are at the close of the libel several direct and pointed interrogatories put to the master on this very point, with a prayer that he may be required to answer them on oath; that is, whether five dollars was not all that was paid the libellant at the time of his discharge, whether he was not imprisoned at St. Thomas by the master's order, what were the expenses of the imprisonment, and whether these were not charged upon the libellant and deducted from his wages. The master by answering these interrogatories would make his answers evidence. For though the general answer of the respondent is not properly evidence any further than the charges in the libel, which are equally verified by oath, yet the answers to special interrogatories, which are sometimes subjoined to the libel, and sometimes put at the hearing, are evidence. If he refuses to answer, the reasonable presumption is that he cannot answer them in his own favor, and the court will therefore take the charges in the libel upon which they are founded as confessed. It cannot be exactly said in this case that the master has refused to answer, and the rules of practice have so far been waived in his favor as to receive and hear the evidence in the defence without an answer. But it is the duty of the court to take care that this indulgence to the defendant shall not work injustice to the libellant. He has offered evidence which, uncontrolled by any other testimony, is sufficient to impeach the correctness of the receipt, and as the master neither answers the interrogatories propounded, nor produces the subscribing witness, this evidence is left to press upon the case with its full weight. This evidence is, that the master made deductions from the wages which he was not authorized to do by law, and that only five dollars were paid to Thomas at the time of his discharge. The master has charged Thomas on the shipping paper with fourteen dollars, or one month's wages, advance paid on shipping. The libellant admits but seven dollars, or half a month's advance. One of the witnesses says that he received five or six dollars with some tobacco, but that he received no clothing. The charge of the master on the shipping paper, fortified by his suppletory oath, would be proof. But I do not see that the charge alone, unsupported by oath, is any further evidence than any book charge. The signature of the seaman to the articles is proof only of the contract. It is not an acknowledgment of any charges which the master may enter on the shipping paper against him, either in the course of the voyage or before it commences. Such charges to be raised into evidence require to be verified by oath, and the master, I presume, would be allowed to tender his oath in support of them as a shopkeeper is permitted to swear to his books. It appears by the shipping paper that the libellant shipped the 22d of May, and was discharged the 15th of August. This makes 2 months and 25 days, which at $14 a month amounts to $39.65. Deduct from this $7 paid in advance, and $5 at the end of the voyage, and there remains $27.65, the balance due.