Ludwig C. Jensen, Plaintiff, *v.* Barber Steamship Lines, Defendant.

(Municipal Court of City of New York, Borough of Manhattan, First District, March, 1920.)

Ships and shipping — seamen's wages — shipping articles — associations — releases — United States Revised Statutes, § 4552.

Plaintiff engaged to work as a seaman on one of defendant's ships under articles which though not specifying the hours which plaintiff was required to work contained the following clause in the handwriting of the United States shipping commissioner: "In event of a general change in wages while ship is away, said change to take effect from date of change." Plaintiff worked twelve hours a day at sea and nine hours a day in port in accordance with the system then in vogue, but while the vessel was at sea, a sailors' association of which he was a member and a steamship association of which defendant was a member, entered into an agreement which provided for an eight-hour day and no work on Sundays and holidays while the vessel was in port. The agreement also provided for an overtime rate per hour for all work done before or after working hours when the vessel was in port, but there was no specification as to the rate of compensation for overtime while the vessel was at sea. After the return of the vessel to the port where the shipping articles were signed plaintiff was paid his wages at the rate provided by the agreement made at sea. In an action to recover an amount figured on the basis of overtime work beyond the eight-hour day both while the vessel was in port and at sea, *held,* that a release, as provided by section 4552 of the United States Revised Statutes, executed by plaintiff at the time of the payment of the wages, whereby he released the master and owners of the vessel from all claims in respect to the past voyage or engagment, was conclusive against the plaintiff's claim, and that defendant was entitled to judgment.

Action by seaman to recover for overtime work.

Eugene I. Yuells, for plaintiff.

Burlingham, Veeder, Masten & Fearey (H. H. Breland, of counsel), for defendant.

LAUER, J. The plaintiff shipped as a seaman on one of the defendant's steamships, the *Sagaporack*, on July 1, 1919. The usual shipping articles were signed by the parties. The plaintiff agreed to work as an able bodied seaman at the rate of seventy-five dollars a month and board. The articles contained the following clause in the handwriting of the United States shipping commissioner: " In event of a general change in wages while vessel is away, said change to take effect from date of change." The shipping articles contained no provision specifying the hours which the plaintiff was required to work. The plaintiff did work twelve hours a day at sea and nine hours a day in port, which seems to have been the system in vogue at the time the articles were signed.

On July 28, 1919, while the vessel on which the plaintiff was employed was at sea the Eastern and Gulf Sailors' Association, of which the plaintiff was at that time a member, and the American Steamship Association, of which the defendant was at that time a member, entered into an agreement wherein among other things it was provided that the rate of wages for an able seaman should be eighty-five dollars a month. The agreement further specified under the heading " working rules " in effect that there should be three watches of eight hours each instead of a system of two watches of twelve hours each, and also provided for an eight hour day and no work on Sundays and holidays while the vessel was in port. The agreement provides for an over time rate of sixty cents per hour for all work performed before or after

the working hours when the vessel is in port. There is, however, no specification in the working rules as to the rate of compensation for over time work while the vessel is at sea.

The plaintiff was paid on November 5, 1919, after the return of the vessel to the port of New York at the rate of eighty-five dollars per month, the wage rate for able seamen as provided in the agreement of July 28, 1919. At that time there was executed by the various seamen employed on the vessel *Sagaporack* and by the master of the vessel, in the presence of a United States shipping commissioner, the following mutual release as provided by the federal statute (U. S. R. S. § 4552): "We, the undersigned, seamen on board the S. S. Sagaporack on her late voyage from N. Y. to Kobe, Japan, do hereby, each one for himself, by our signatures herewith given, in consideration of settlements made before the shipping commissioner at this port, release the master and owners of said vessel from all claims for wages in respect of the said past voyage or engagement, and I, master of said vessel, do also release each of the seamen signing said release from all claims, in consideration of this release signed by them."

The plaintiff now sues to recover $206.40, representing an amount figured on the basis of over time work beyond the eight hour day specified in the agreement of July twenty-eighth both while the vessel was in port and while at sea at the rate of sixty cents per hour.

The plaintiff would undoubtedly be entitled to over time at the rate of sixty cents an hour while the vessel was in port under the agreement of July 28, 1919, but I am in doubt whether he would be entitled to over time pay while the vessel was at sea because of the fact, as I have already pointed out, that the agreement

fails to contain any provision for over time work while the vessel is at sea and fails to contain any specification of an over time rate for work done while the vessel is at sea. I am of the opinion, however, that where an eight hour day at sea is provided for a seaman working beyond the eight hour period at sea would be entitled to extra compensation unless the work done came within the specification of working rule 1 which provides that ''any work for the safety of the vessel, her cargo, passengers and crew to be done at any time without extra compensation.'' I should assume, however, that ordinary routine work done in the course of the voyage of the vessel which was beyond the eight hour time specified in the agreement which was not of an extraordinary nature would not come within the scope of rule 1 just quoted, even though doubtless all work done by a seaman on the voyage of the vessel is in the nature of work done for the safety of the vessel, her cargo, passengers and crew. This rule contemplates, I think, not the ordinary routine work but work of an unusual and extraordinary character. The defendant contends that the change in working hours under the agreement of July 28, 1919, was not a '' change in wages'' as provided for in the agreement contained in the shipping articles, which provides that the plaintiff should have the benefit of a '' general change in wages while the vessel is away.'' In my opinion the shortening of working hours with the provision for over time payment beyond the regular hours of work is in effect a general change in wages and would come within the scope of that provision of the shipping articles.

The plaintiff, therefore, according to the view I take of the situation, would be entitled to a recovery in this case but for the defense that he executed the release before quoted. The plaintiff seeks to avoid the effect

Municipal Court of New York, March, 1920.    [Vol. 110.

of this release by testifying that at the time he signed it he objected to doing so on the ground that it did not cover all that he was entitled to. He states that he received the assurance of the master before signing that in signing it he would not be foreclosed of his claim for additional compensation for over time. The master of the vessel was away at the time of the trial and his testimony was not supplied. The United States deputy shipping commissioner who signed the release and who apparently was present when the men were paid off and when the mutual release before quoted was executed contradicts the plaintiff and states that no claim for over time or for any payment beyond that which the men received was made by any of the men at the time the releases were executed.

I am asked by the plaintiff to disregard this release which he signed on the authority of a number of cases decided by the United States District Court, in various districts, sitting as a court of admiralty. These cases are: *The David Pratt,* 7 Fed. Cas. 24; *Leak* v. *Isaacson,* 15 id. No. 8160; *The Rajah,* 20 id. 193, No. 11538; *Savin* v. *The Juno,* 21 id. No. 12390.

The principle underlying all these cases is stated in the case of *Domenico* v. *Alaska Packers' Assn.,* 112 Fed. Repr. 554–560 (reversed on another point in 117 id. 99) as follows: " That courts of admiralty are not bound in the decision of cases before them by technical rules, but are governed by enlarged views of equity and justice; and as seamen are usually improvident, and often ignorant of their rights, they are frequently tempted by their necessities to take less than is due them.''

In the present case it does not appear that the plaintiff was either ignorant or improvident. He seemed to be a man of intelligence and while perhaps not versed in his legal rights apparently had knowledge

of the terms of the agreement of July 28, 1919, long before the vessel arrived in the port of New York. In fact he admitted that he already knew of the change in the rate of wages when his vessel was in port at Honolulu. It does not appear that the plaintiff was in want or that there was any fraud or unfair dealing of any kind on the part of the master of the vessel unless the plaintiff's claim that he might sign the release and still reserve his right to additional compensation be regarded as evidence of fraud on the part of the defendant. The plaintiff urges that this court should follow the decisions in the United States District Court sitting as a court of admiralty. As was stated in the case of *The David Pratt,* before cited: " Whatever effect a court of common law might feel itself compelled to give to an instrument of this kind" (release under seal), " it will not follow that a court of admiralty will be precluded from looking into the consideration for which it was given, merely because it is sealed. A court of admiralty is, as to all matters falling within its jurisdiction, a court of equity. Its hands are not tied up by the rigid and technical rules of the common law, but it administers justice upon the large and liberal principles of courts which exercise a general equity jurisdiction."

Unfortunately the Municipal Court is not a court possessing equity jurisdiction, and however much I am of the opinion that this court ought to possess jurisdiction whether at law or in equity which would permit it to do full justice disregarding the antiquated distinction between actions at law and in equity, nevertheless up to the present time equity jurisdiction has not been conferred upon this court. While, however, this court does not possess general equity jurisdiction equitable defenses may be set up and this court may take cognizance of such defenses

Municipal Court of New York, March, 1920.    [Vol. 110.

if no affirmative action to enforce them equitably will be required. *Geller* v. *Kings County Mortgage Co.,* 97 Misc. Rep. 707. So in the case at bar, if the plaintiff was able to establish that the release which was executed was the result of fraud or of mutual mistake this court would be justified in disregarding the release. *Mindler* v. *Palmer,* 165 N. Y. Supp. 987, citing *Kirchner* v. *New Home Sewing M. Co.,* 135 N. Y. 182. In this latter case it was held that if the plaintiff can show by mutual mistake of the parties, or by what is its equivalent, a mistake on his part and fraud on the part of his adversary, the cause of action sued on is embraced in the release, contrary to the intent of the parties, or contrary to his intent because fraud is proven, the release does not bar his cause of action. In spite, therefore, of the fact that this court does not possess the general equity jurisdiction which a court of admiralty possesses it would seem that there would be sufficient power to hold the release inoperative and ineffective if fraud or mutual mistake had been established. Applying the principle before quoted as laid down by courts of admiralty and regarding the plaintiff as a man ignorant and improvident and unable to take care of his interests, I cannot say that there is any evidence which would justify the court in saying that the defendant had been guilty of fraud. The principle announced in the cases cited by the plaintiff are all cases which arose prior to the provision of section 4552 of the United States Revised Statutes. That statute would seem to have been enacted for the very purpose of protecting seamen, a class of men who perhaps because they are at sea for the greater part of their time are less able to cope with men who come in contact with the affairs of business on shore. For this purpose it provides that the release which shall be exchanged shall be executed

in the presence of a disinterested party, to wit, a United States shipping commissioner. A release executed in conformity with this provision of the United States Revised Statutes has been held as a bar to a subsequent action. *The Pennsylvania,* 98 Fed. Repr. 744; *Rosenberg* v. *Doe,* 146 Mass. 191. The language of the statute is plain and unequivocal. I quote the statute (§ 4552):

"The following rules shall be observed with respect to the settlement of wages:

"*First.* Upon the completion, before a shipping commissioner, of any discharge and settlement, the master or owner and each seaman, respectively, in the presence of the shipping commissioner, shall sign a mutual release of all claims for wages in respect of the past voyage or engagement, and the shipping commissioner shall also sign and attest it, and shall retain it in a book to be kept for that purpose, provided both the master and seamen assent to such settlement, or the settlement has been adjusted by the shipping commissioner.

"*Second.* Such release, so signed and attested, shall operate as a mutual discharge and settlement of all demands for wages between the parties thereto, on account of wages, in respect of the past voyage or engagement."

The language of Mr. Justice Holmes, then a justice of the Supreme Court of Massachusetts, now a justice of the United States Supreme Court, in *Rosenberg* v. *Doe, supra,* seems to me to be most pertinent and is expressive of my opinion as to the plaintiff's claim in the present action: " The statute means to make the release conclusive, if it is executed and attested as required, without fraud or coercion."

Having reached the conclusion that the plaintiff has established neither fraud nor mutual mistake I must

hold the release as conclusive against any claim asserted by the plaintiff in this action.

I have given expression to my views somewhat at length because of the fact that I have been led to believe by counsel that this case was in the nature of a test case and that other actions of a similar nature were either pending or contemplated.

It follows that entertaining these views judgment must be for the defendant.

Judgment for defendant.