## MASSACHUSETTS v. WESTERN UNION TELEGRAPH COMPANY.—WESTERN UNION TELEGRAPH COMPANY v. MASSACHUSETTS.[1]

## MASSACHUSETTS v. WESTERN UNION TELEGRAPH COMPANY.—WESTERN UNION TELEGRAPH COMPANY v. MASSACHUSETTS.

## MASSACHUSETTS v. WESTERN UNION TELEGRAPH COMPANY.—WESTERN UNION TELEGRAPH COMPANY v. MASSACHUSETTS.

APPEALS AND CROSS APPEALS FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF MASSACHUSETTS.

Nos. 1126, 1127, 1128, 1129, 1130, 1131. Argued January 19, 20, 1891.—Decided May 25, 1891.

The tax imposed by the statutes of Massachusetts, (Pub. Stat. c. 13, §§ 40, 42,) requiring every telegraph company owning a line of telegraph within the State to pay to the state treasurer " a tax upon its corporate franchise at a valuation thereof equal to the aggregate value of the shares in its capital stock," deducting such portion of that valuation as is proportional to the length of its lines without the State, and deducting also an amount equal to the value of its real estate and machinery subject to local taxation within the State, is in effect a tax upon the corporation on account of property owned and used by it within the State; and is constitutional and valid, as applied to a telegraph company incorporated by another State, and which has accepted the rights conferred by Congress by § 5263 of the Revised Statutes.

Western Union Telegraph Company v. Attorney General of Massachusetts, 125 U. S. 530, followed.

Upon rendering a decree for the plaintiff in a suit in equity, brought in behalf of a State, pursuant to statute, to recover the amount of a tax with interest thereon at the rate of twelve per cent until paid, a sum tendered and paid into court by the defendant, for part of that amount and interest thereon at that rate, is to be applied to the payment of both principal and interest of the sum so admitted to be due; interest at the rate of twelve per cent is to be computed on the rest of the principal until the date of the decree; and from that date interest on the lawful amount of the decree is to be computed at the ordinary rate of six per cent only, notwithstanding the final disposition of the case is delayed by appeal.

---

[1] In these cases the docket title was in all the cases " The Attorney General of the State of Massachusetts" instead of " Massachusetts."

THE case is stated in the opinion.

*Mr. Henry C. Bliss* for the State of Massachusetts.

*Mr. Wager Swayne* for the Western Union Telegraph Company.

MR. JUSTICE GRAY delivered the opinion of the court.

Three informations in equity were filed in the Supreme Judicial Court of Massachusetts, by the Attorney General at the relation of the Treasurer of the Commonwealth, against the Western Union Telegraph Company, a corporation of New York, under section 54 of chapter 13 of the Public Statutes of Massachusetts, for the recovery of taxes assessed to the defendant for the years 1886, 1887 and 1888, under other sections of that chapter, and interest thereon at the rate of twelve per cent a year until paid, and for an injunction against the defendant's prosecution of its business until payment of such taxes and interest.

Upon petition of the defendant, alleging that the matter in dispute arose under the Constitution and laws of the United States, the three suits were removed into the Circuit Court of the United States, and were there heard upon pleadings and proofs, and decrees entered for the amounts of the taxes and interest, deducting certain sums paid into court by the defendant, and granting no injunction. Both parties appealed to this court.

These cases cannot be distinguished from that of *Western Union Telegraph Co.* v. *Attorney General of Massachusetts,* 125 U. S. 530, in which the validity of similar taxes was upheld in a judgment delivered by Mr. Justice Miller with no dissent.

The Constitution of Massachusetts, c. 1, sec. 1, art. 4, empowers the legislature " to impose and levy proportional and reasonable assessments, rates and taxes, upon all the inhabitants of, and persons resident, and estates lying within, the said Commonwealth; and also to impose and levy reasonable duties and excises upon any produce, goods, wares, merchan-

dise and commodities whatsoever, brought into, produced, manufactured or being within the same." 1 Charters and Constitutions, 961.

The statutes, pursuant to which the taxes now in question were assessed and sought to be collected, are set forth in full in 125 U. S. 531–534, note, and the material provisions of them are as follows:

By § 38, "every corporation chartered by the Commonwealth, or organized under the general laws, for purposes of business or profit, having a capital stock divided into shares," (with certain exceptions,) shall annually return to the tax commissioner a list of its shareholders and the number of shares belonging to each, the amount of its capital stock, the par value and market value of the shares, and the locality and value of its real estate and machinery subject to local taxation within the Commonwealth; and "railroad and telegraph companies shall return the whole length of their lines, and the length of so much of their lines as is without the Commonwealth."

By § 39, the tax commissioner shall ascertain the true market value of the shares of each corporation, and estimate the fair cash valuation of all the shares constituting its capital stock, and shall also ascertain and determine the value of its real estate and machinery subject to local taxation, and of the deductions provided in § 40.

By § 40, "every corporation embraced in the provisions of section thirty-eight shall annually pay a tax upon its corporate franchise at a valuation thereof equal to the aggregate value of the shares in its capital stock, as determined in the preceding section, after making the deductions provided for in this section, at a rate determined by an apportionment of the whole amount of money to be raised by taxation upon property in the Commonwealth during the same current year," "upon the aggregate valuation of all the cities and towns for the preceding year." " From the valuation, ascertained and determined as aforesaid, there shall be deducted: First, in case of railroad and telegraph companies, whose lines extend beyond the limits of the Commonwealth, such portion of the whole

valuation of their capital stock, ascertained as aforesaid, as is proportional to the length of that part of their line lying without the Commonwealth, and also an amount equal to the value, as determined by the tax commissioner, of their real estate and machinery located and subject to local taxation within the Commonwealth. Second, in case of other corporations, included in section thirty-eight of this chapter, an amount equal to the value, as determined by the tax commissioner, of their real estate and machinery subject to local taxation, wherever situated."

By § 42, "every corporation or association, chartered or organized elsewhere, which owns, or controls and uses, under lease or otherwise, a line' of telegraph within this Commonwealth," shall make all the returns prescribed by § 38, excepting the list of shareholders, "and shall annually pay a tax, at the same rate, and to be ascertained and determined in the same manner," as is provided in § 40.

By § 54, taxes assessed under §§ 40 and 42 may be recovered, "with interest at the rate of twelve per cent per annum until the same are paid," by action in the name of the treasurer of the Commonwealth, or by information at his relation in the Supreme Judicial Court.

It is to be remembered that by the tax act of Massachusetts "taxes on real estate shall be assessed in the city or town where the estate lies;" and "all machinery employed in any branch of manufacture, shall be assessed where such machinery is situated or employed; and, in assessing the stockholders for their shares in any manufacturing corporation, there shall first be deducted from the value thereof the value of the machinery and real estate belonging to such corporation." Mass. Pub. Stat. c. 11, §§ 13, 20. Although it is hard to see how telegraph companies can have "machinery employed in any branch of manufacture," unless they make their own machines, yet railroad corporations, which are coupled with telegraph companies in the statutes in question, as well as other corporations embraced in those statutes, might have such machinery.

The effect of the statutes complained of is that every tele-

graph company, whether incorporated in Massachusetts or elsewhere, owning a line of telegraph in Massachusetts, is to be there taxed on such proportion only of the whole value of its capital stock as the length of its line in Massachusetts bears to the whole length of its lines everywhere; and to prevent its whole tax in Massachusetts from amounting in any event to more than that, it is provided that from the taxable portion of the value of its capital, so ascertained, shall be deducted the value of any property owned by it in Massachusetts which is subject to local taxation in the cities and towns.

Such being the real state of the case, all the objections to the validity of the tax are met and disposed of by the decision of this court in the former case between these parties.

In that case, as in this, the telegraph company, while admitting that its property in the State of Massachusetts was subject to taxation there like other property, argued that, by reason of its having accepted the provisions of the act of July 24, 1866, c. 230, (14 Stat. 221,) now embodied in §§ 5263–5269 of the Revised Statutes, and having thus acquired under § 5263 "the right to construct, maintain and operate lines of telegraph through and over any portion of the public domain of the United States, over and along any of the railway or post roads of the United States, and over, under or across the navigable streams or waters of the United States," it had a franchise from the United States which could not be taxed by any State through which its lines ran; that the statutes of Massachusetts, in terms and effect, undertook to tax the franchises of the corporation; and that the tax was unconstitutional and void, both as interfering with interstate commerce and as being unequal and excessive.

But this court, in answering that argument and upholding the validity of the tax, affirmed the following propositions:

The franchise of the company to be a corporation, and to carry on the business of telegraphing, was derived not from the act of Congress, but from the laws of the State of New York, under which it was organized; and it never could have been intended by the Congress of the United States, in conferring upon a corporation of one State the authority to enter

the territory of any other State, and to erect its poles and lines therein, to establish the proposition that such a company owed no obedience to the laws of the State into which it thus entered, and was under no obligation to pay its fair proportion of the taxes necessary to the support of the government of that State. 125 U. S. 547, 548.

By whatever name the tax may be called, as described in the laws of Massachusetts, it is essentially an excise upon the capital of the corporation; and those laws attempt to ascertain the just amount which any corporation engaged in business within its limits shall pay as a contribution to the support of its government upon the amount and value of the capital so employed by it therein. 125 U. S. 547.

The tax, though nominally upon the shares of the capital stock of the company, is in effect a tax upon that organization on account of property owned and used by it in the State of Massachusetts; and the proportion of the length of its lines in that State to their entire length throughout the whole country is made the basis for ascertaining the value of that property. Such a tax is not forbidden by the acceptance on the part of the telegraph company of the rights conferred by § 5263 of the Revised Statutes, or by the commerce clause of the Constitution. 125 U. S. 552.

The statute of Massachusetts is intended to govern the taxation of all corporations doing business within its territory, whether organized under its own laws or under those of some other State; and the rule adopted to ascertain the amount of the value of the capital engaged in that business within its boundaries, on which the tax should be assessed, is not an unfair or unjust one; and the details of the method by which this was determined have not exceeded the fair range of legislative discretion. 125 U. S. 553.

That decision was cited by the court in *Ratterman* v. *Western Union Telegraph Co.*, 127 U. S. 411, 426, 427, and in *Leloup* v. *Mobile*, 127 U. S. 640, 649.

The other questions argued relate to the amounts for which decrees were entered. In each case, the defendant admitted its liability to pay a tax on the actual value, as stated in its

answer, of its real and personal property within the State; and tendered, and paid into court, the sum so admitted to be due, with interest thereon at the rate of twelve per cent, and costs. The sum so paid in was greater than like interest then accrued on the whole amount of the tax assessed and sued for. The court added, to the whole amount of the tax sued for, interest thereon at the rate of twelve per cent to the date of the payment into court; deducted from the sum so ascertained the sum paid in; and entered a decree for the balance, with interest thereon at the rate of twelve per cent from the date of such payment to the date of the decree, and, thereafter until payment, interest on the amount of the decree at the rate of six per cent, that being the usual rate of interest in Massachusetts.

It is contended, in behalf of the State, that the tender and payment into court could have no effect in a suit of this kind to recover a tax, with interest thereon at the rate of twelve per cent in the nature of a penalty; and that such interest must be computed at that rate, not merely to the time of the decree below, but to the time of payment, or at least to the time of the final decree in this court. On the other hand, it is contended that the sum paid into court should have been applied, according to the evident intention of the defendant in paying it, to both principal and interest of the sum admitted to be due; instead of applying it to interest, on the whole claim sued for, and thereby increasing the sum on which to compute subsequent interest.

We are of opinion that in this matter the defendant is right. In equity, at least, the defendant was entitled to the benefit of the sum paid into court. That sum should have been applied to that part of the principal sum and interest which was admitted to be due. After the payment into court, as before, interest at the rate of twelve per cent was to be computed on the rest of the principal. The penal rate of twelve per cent interest ran only until the amount to be recovered was judicially ascertained. Since the date of the decree below, interest is to be computed on the lawful amount of the decree at the rate of six per cent only.

In each of the three cases, therefore, the entry must be

> *Decree reversed, and case remanded with directions to enter a decree for the amount of the tax found due by the Circuit Court, but applying the sum paid into court, and computing interest on the balance, in accordance with the opinion of this court; the costs in this court to be equally divided between the parties.*

MR. JUSTICE FIELD and MR. JUSTICE HARLAN dissented.