## THE LAKE GALEWOOD.

District Court, D. Maryland. October 5, 1927.

No. 1553.

1. Seamen ⬙18—Delay in paying seaman held not "without sufficient cause" (46 USCA § 596).

The fact that a seaman was absent without leave when the voyage terminated and other members of the crew were paid off was "sufficient cause" for not paying him immediately when he appeared the next day after the paymaster had gone, and he was not entitled, under Rev. St. § 4529 (46 USCA § 596 [Comp. St. § 8320]), to double pay during the delay necessary to notify the owner and obtain the money.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Without Sufficient Cause.]

2. Seamen ⬙18—Tender of wages on condition held unwarranted, and seaman held entitled to recover double wages to date of decree (46 USCA § 596).

Tender of wages due seaman on condition that he accept same in full settlement was unwarranted, and the seaman *held* entitled, under Rev. St. § 4529 (46 USCA § 596 [Comp. St. § 8320]), to recover double wages from the time of tender to date of decree.

In Admiralty. Suit by Glenn Stineman against the steamship Lake Galewood and others. Decree for libelant.

Jacob Louis Morewitz, of Newport News, Va., and Morris A. Rome, of Baltimore, Md., for libelant.

Janney, Ober, Slingluff & Williams, of Baltimore, Md., for respondents.

COLEMAN, District Judge. The libel in this case is for the recovery of wages and penalties under Revised Statutes, § 4529 (46 USCA § 596; Comp. St. § 8320). It is alleged that the libelant was employed as third engineer on the steamship Lake Galewood at $125 a month. Valid shipping articles appear to have been executed. It further appears that on April 5, 1927, the libelant was arrested in Newport News, Va., while ashore, and that his vessel sailed without him. Up to the time that he left the vessel his unpaid wages amounted to $69.17, which amount was sent by the owners of the vessel to the United States Shipping Commissioner in Newport News on April 30th, to be paid to the libelant upon his accepting the same in full payment for all sums due him, and upon his signing a receipt to this effect. The voyage was completed upon the vessel's return to Newport News on April 18th, and the crew was paid off there on April 19th by the paymaster of the owners, who came from New York for this purpose. Since the libelant was not present to receive his pay, it was taken back to New York, and sent, as aforesaid, to the Shipping Commissioner.

On April 20th, the libelant applied to the master of the vessel in person for his pay, and he was referred to the company's office in New York, which in turn sent the letter, just mentioned, to the Shipping Commissioner on April 30th. The libelant refused to

accept the wages deposited with the Shipping Commissioner, and claimed that he was entitled to recover the penalty of two days' pay for each day that his wages had been withheld beyond the period specified in section 4529 of the Revised Statutes. In other words, the libelant insists that, in spite of his absence from the ship without leave when the rest of the crew was paid off on April 19th, the master was nevertheless bound to pay him when he reappeared and made demand on April 20th, or else incur the penalties under the statute. The master testified that in every port he had had difficulty with the libelant by reason of his being absent from the ship without leave, and by reason of other derelictions.

[1] The first question to be decided is whether libelant is entitled to penalties under section 4529 of the Revised Statutes, which is as follows:

"The master or owner of any vessel making coasting voyages shall pay to every seaman his wages within two days after the termination of the agreement under which he was shipped, or at the time such seaman is discharged, whichever first happens; and in case of vessels making foreign voyages, or from a port on the Atlantic to a port on the Pacific, or vice versa, within twenty-four hours after the cargo has been discharged, or within four days after the seaman has been discharged, whichever first happens; and in all cases the seaman shall be entitled to be paid at the time of his discharge on account of wages a sum equal to one-third part of the balance due him. Every master or owner who refuses or neglects to make payment in the manner hereinbefore mentioned without sufficient cause shall pay to the seaman a sum equal to two days' pay for each and every day during which payment is delayed beyond the respective periods, which sum shall be recoverable as wages in any claim made before the court; but this section shall not apply to masters or owners of any vessel the seamen of which are entitled to share in the profits of the cruise or voyage."

It will be seen that the penalties are to be paid whenever a master or owner "refuses or neglects to make payment in the manner hereinbefore mentioned *without sufficient cause.*" Did the master and the owners of the ship have sufficient cause to delay the payment of wages to this libelant? The owners of the vessel claim that the words "without sufficient cause" are the equivalent of "without reasonable cause," and that the master was entirely justified in postponing payment to the libelant of the balance of wages

due him, at least until the owners could be communicated with, and until it could be ascertained whether they would insist upon fines being assessed against these earned wages of the libelant by reason of his unexcused absences from the vessel, or would waive them, as was in fact done, and until the necessary funds might be obtained from the owners' paymaster.

The court is of the opinion that the action of both the master and the owners, resulting in the delay of 10 days before putting the Shipping Commissioner in funds with which to pay libelant, was entirely justified. The delay was directly caused by the absence of libelant, which in turn was due entirely to his own dereliction. The libelant had been directed on April 5th to report back on board the vessel by 10 p. m., which he failed to do. No question of discharge is here involved. The libelant's contract of service terminated on April 18th, and while it is true that he reappeared and made claim within two days thereafter, the master was not required to anticipate that he might do so. In the case of The George W. Wells (D. C.) 118 F. 761, it was held that the phrase "without sufficient cause," used in the statute in question, is to be construed as equivalent to "without reasonable cause," and this decision is relied upon in the case of O'Hara v. Luckenbach S. S. Co. (C. C. A.) 16 F.(2d) 681, where it was held, in construing this same section of the Revised Statutes, that seamen are not entitled to recover double wages imposed as a penalty during delay caused by litigation, even though such litigation is finally determined in the seamen's favor. The court said, at pages 681 and 682:

"The controversy was carried on in good faith, and presented for decision a question which the master had a right to have adjudicated. The fact that the Supreme Court concluded that our interpretation, which affirmed the view of the District Court, was erroneous, and therefore reversed the decree, is not by itself a valid reason for holding that there was not sufficient cause for refusal to make payment demanded by the men. * * * "We hold that the refusal to make payment was based upon reasonable cause, and that it would be unjust to penalize the steamship company because it litigated the question." See the Supreme Court's decision, 269 U. S. 364, 46 S. Ct. 157, 70 L. Ed. 313; see also Pacific Mail S. S. Co. v. Schmidt, 241 U. S. 245, 36 S. Ct. 581, 60 L. Ed. 982. A fortiori, it would seem clear that, in the present case, the master was entirely justified in not attempting to meet the demand of the libelant,

when the latter was admittedly in the wrong under his contract of service, and had failed to appear at the proper time upon the termination of such contract in order that he might be paid off. Similarly, it was not unreasonable for the owners, under the given circumstances, to extend their investigation over a period of ten days.

[2] It therefore follows that, had the tender, which was made through the Shipping Commissioner on April 30th, been an unconditional one, the situation would be conclusive against libelant's claim. However, the tender was made upon the condition that libelant accept payment of $69.17 in full settlement. The check so stated on its face, and a separate receipt and release to the same effect was tendered for signature. In the Charles Whittemore, 11 F.(2d) 344, the Circuit Court of Appeals for this circuit held that a master's refusal to pay seamen's wages, which were admittedly due after deduction of fines, unless the seamen accepted the same in full payment of everything due them, was unwarranted, saying (page 345):

"This the respondent could not do, as it constituted neither a payment of the wages nor a lawful tender of the amount due, but, on the contrary, a proffer of a future lawsuit respecting the same. The fact that, in the litigation that followed in this particular case, the court sustained respondent's claim to withhold the fines and penalties imposed, would not warrant the imposition of any such condition or penalty as was sought to be imposed. The only effect of libelants' accepting the payment of the wages upon the conditions prescribed would have been to surrender their claims entirely."

In the present case, claimant attempts to distinguish the Whittemore Case by saying that, whereas a shipowner, as in the Whittemore Case, may not have "sufficient cause" to deduct a penalty which he seeks to enforce out of the seaman's earned wages, nevertheless a shipowner has "sufficient cause" to decline to add to the entire amount of earned wages, an additional sum for a penalty, as is requested in the present case. Admitting the distinction, the two cases are still alike, in that such tender as was made was conditional upon acceptance in full, and this Judge Waddill, in the Whittemore Case, held to be contrary to the statute. Claimant further asserts that it is customary to pay off seamen in the presence of the Shipping Commissioner, and to secure seamen's releases, and cites section 4552 of the Revised Statutes (46 USCA § 644; Comp. St. § 8341) in support thereof. But that provision obviously covers only such mutual releases as are *voluntarily* given.

The court, therefore, finds that libelant was entitled to be paid unconditionally, on May 1, 1927, $69.17, and that, since the money was not so tendered at that time, libelant is entitled, under the statute, to an additional sum equal to two days' pay for each and every day from May 1st to the date of the original decree in this case. Such penalty seems disproportionate, but there appears to be no escape, under the language of the statute and the decision in the Whittemore Case. Since diligence appears to have been practiced in instituting this suit and in the subsequent pleadings, there would seem to be no ground for limiting the application of the statutory penalties, such as may be justified in some cases. See The Walter D. Noyes, 20 F.(2d) 342.