## THE LAKE GAITHER.

### TRINTAFILAS v. NEWTEX S. S. CORPORATION et al.

#### No. 2922.

Circuit Court of Appeals, Fourth Circuit.

April 8, 1930.

Jacob L. Morewitz, of Newport News, Va. (H. H. Kanter, of Norfolk, Va., on the brief), for appellant.

H. H. Little, of Norfolk, Va. (Hughes, Little & Seawell, of Norfolk, Va., on the brief), for appellees.

Before PARKER and NORTHCOTT, Circuit Judges, and McCLINTIC, District Judge.

NORTHCOTT, Circuit Judge.

This is a libel filed against the steamship Lake Gaither, in rem, and against her owners, charterers, master, and some others, in personam, setting up three causes of action (1) Alleged damages for personal injury; (2) alleged failure to furnish medical attention; and (3) alleged claim for wages and waiting time under the statute. Sections 4529, 4530 Revised Statutes, as amended by the Seamen Act of March 4, 1915 (46 USCA §§ 596, 597).

The libelant joined the Lake Gaither during the latter part of December, 1927, at New York, as an oiler, the vessel then being about to sail on a voyage to Newport News and other South Atlantic ports, from which she returned to Norfolk about the 16th of January, 1928, where the libelant left her.

Libelant signed articles on board the ship before the first officer, and claimed that he did this after the voyage was begun. On the arrival of the vessel at Norfolk, January 16, libelant went to the master and asked for his wages. The master sent for the chief engineer, and obtaining his approval, offered libelant the amount due him. This libelant refused to accept, stating that the amount was not correct. Later he again asked the master for the money, admitting the amount was correct, but demanding transportation back to New York. This the master refused to give him. Libelant went to see the shipping commissioner at Norfolk. The next day, in the afternoon libelant again returned to the ship and asked the master for his money, and claimed that he signed a receipt for same, or did what is termed as "signing clear," and just as the master was about to pay him, made the statement, "I am going to sue the Company for getting hurt," whereupon the master refused to pay him, except on condition that he sign a receipt to the effect that he had not contracted any illness of any kind, or been injured on board the ship during the voyage he had just made. Libelant refused to sign such a statement, and was not paid. The master then sent the amount of the wages to the shipping com-

missioner, who retained the money because he had no authority to pay·libelant under the circumstances, or to turn the money over to the court, as in the case of a deserter. The shipping commissioner then wrote to the captain of the ship that he must either classify libelant as a deserter or discharge him by mutual consent, whereupon the captain logged libelant as a deserter, and so wrote the shipping commissioner.

Libelant claimed that he asked the master for a hospital slip, which would entitle him to receive treatment at the expense of the government, but this was refused him. This claim of the libelant, as to the hospital slip, was denied by the master and the officers of the ship. Libelant was obstreperous and abusive, both with the officers of the ship and the shipping commissioner, and unquestionably, acted in a very violent manner throughout the negotiations at Norfolk.

On April 20, 1928, appellant, not having received his wages or any part thereof, filed this libel, setting out the three causes of action mentioned. On May 2, 1928, proctors for appellees mailed proctor for libelant a check for the amount of wages due libelant, without condition.

After the taking of testimony, partly by deposition and partly by witnesses in person, the proctors for libelant abandoned the claim for damages for alleged personal injury, and the trial judge found against libelant, as to the alleged failure to furnish proper medical attention and maintenance and cure, and also found against the libelant, as to the claim for wages and waiting time, under the statute, from which action of the court below this appeal was taken.

A careful study of the record leads us to the conclusion that in denying libelant claims for alleged failure to furnish medical attention and maintenance and cure, the learned judge below was right. On this point, the trial judge said: "The evidence of libelant shows that he has a hernia. His testimony is that he received it as the result of lifting a weight while on the ship. The evidence of the Master, chief engineer, and first assistant engineer is that he never received an injury on the ship and never complained that he had received an injury on the ship and never complained of being sick or injured at any time until after the arrival of the vessel at Norfolk, and though libelant called on the Shipping Commissioner several times in relation to his controversy with the ship, he never once complained of

having received an injury aboard ship. It was about a year after libelant left the ship when he appeared in court to give his testimony, and up to that time he appeared.to have taken no medical advice or had anything done with relation to the hernia, though it would have been a very simple matter as a seaman for him to have had hospitalization, including an operation, at the expense of the government. There could have been no possible object on the part of the Master in refusing him a hospital slip. It would have cost the vessel nothing, and is a common and universal practice and an almost everyday occurrence on all merchant ships. I think the great preponderance of the evidence indicates clearly that the man's hernia was not of recent occurrence, and I think it most·unlikely that it was occasioned by injury during the three weeks that he was aboard the Lake Gaither. But even if I should be wrong in this, it would·be difficult to fix, with any accuracy, any amount that he would be entitled to for maintenance and cure since he has never made any effort to be cured and since there is no evidence of his expenditure for maintenance. * * * In consideration of these matters, I am disposed to think that there should be no allowance for maintenance and cure."

The trial judge heard some of the witnesses testify and saw them, and it is not necessary to quote the authorities holding that, under these circumstances, his conclusions are entitled to great weight.

We cannot agree with the conclusion reached by the judge below, as to claim for wages and waiting time. The evidence clearly shows that an agreement was reached at Norfolk .between the master and libelant, that libelant should be discharged. The master testified to this, stating that he agreed to the seaman's discharge after consultation with the chief engineer. The chief engineer testified that he advised the captain to discharge the seaman, stating he did not want a man on board the ship that did not want to remain, and no officer of the ship testified otherwise. The learned judge below found that the master had no right to impose, as a condition of the payment of wages due libelant, the signing of the statement above mentioned, but bases his decision upon the ground that the master had a right to require the libelant to return to New York in completion of the voyage. We think the trial judge overlooked the admitted fact that the seaman's discharge had been mutual-

ly agreed to by the libelant and the master, which agreement was concurred in by the chief engineer. This agreement once reached, the right of the master to require libelant to return with the ship to New York ended, and the seaman was then and there entitled to be paid the wages due him, without condition.

In passing section 4529, Revised Statutes, as amended by the Seamen Act of March 4, 1915 (46 USCA § 596), it was clearly the intention of Congress to protect seamen under the circumstances shown to exist in this case, and the courts have uniformly upheld the act. This court has repeatedly spoken on this subject, and has uniformly laid down the rule that in the payment of wages to seamen no condition, such as was laid down here, may be imposed. The Charles Whittemore (C. C. A.) 11 F.(2d) 344; Mystic S. S. Co. v. Stromland (C. C. A.) 20 F.(2d) 342; Id. (C. C. A.) 21 F.(2d) 607; Swanson v. Torry (C. C. A.) 25 F.(2d) 835; The Lake Galewood (D. C.) 21 F.(2d) 987; Id. (C. C. A.) 25 F.(2d) 1020.

We feel that we cannot be too emphatic in reiterating the rule laid down by this court, in the above-cited cases, by reference to which will be found a full discussion of authorities on this point. Masters should not impose upon seamen any conditions as to payment, and especially should they not impose as a condition to payment a waiver of any legal right the seaman may have. If the seaman's claim be unfounded and preposterous the master takes no chance in payment without condition, and to require what would be in effect a waiver of the right to bring such action as the seaman may be advised to bring, is in contravention not only of the plain provision of the act, but is a violation of the clear intention of Congress in its passage.

We are of the opinion that libelant is entitled, as compensation, to the waiting time allowed under the statute, from the 20th day of January, 1928, two days after the date when payment was finally refused him, to May 2, 1928, the date of payment, double the wages agreed upon.

The action of the District Court in rejecting the claim for maintenance and cure is affirmed, but that part of the decree denying "waiting time" is reversed, and this cause is remanded to the court below to be further proceeded with in accordance with this opinion.

Affirmed in part, reversed in part, and remanded.