James W. SWAIN, Jr., Appellant,

v.

ISTHMIAN LINES, INC.

No. 15327.

United States Court of Appeals Third Circuit.

Argued Dec. 10, 1965.

Decided April 13, 1966.

Rehearing Denied May 17, 1966.

Sidney J. Smolinsky, Philadelphia, Pa., for appellant.

James F. Young, Krusen Evans & Byrne, Philadelphia, Pa., for Isthmian Lines, Inc., appellee.

Before KALODNER, Chief Judge, and STALEY and FORMAN, Circuit Judges.

FORMAN, Circuit Judge.

In the admiralty action brought by a seaman, James W. Swain (hereinafter appellant), against Isthmian Lines, Inc. (hereinafter appellee), the United States District Court for the Eastern District of Pennsylvania granted summary judgment for appellant and awarded $570 in damages. This appeal contests the amount of the damage award and the method of its determination. No cross appeal has been filed by the appellee contesting the entry of summary judgment adverse to it.

On May 27, 1963, appellant signed articles for a foreign voyage aboard the ship "Steel Designer" in the capacity of a utility messman at $284.52 monthly ($9.48 daily). In the port of Suez, on August 16, 1963, appellant reported ill. On the following day he was diagnosed as having syphilis in its primary stage, and was relieved of his duties as of August 16, 1963. The ship incurred a medical bill of $43.02 at Suez for appellant's needed drugs and medical treatment. With the ship's return to the United States on September 3, 1963, appellant signed off the vessel's articles. Appellee paid him wages for the foreign voyage from May 27, 1963 to August 16, 1963. From these wages were deducted, among other things, the $43.02 medical expense incurred by the ship at Suez. Appellant protested this deduction.

Appellant retained a proctor on September 10, 1963. On September 19 his proctor sent a letter to appellee formally protesting the propriety of the deduction of $43.02 from appellant's wages and asserting, among other things, a claim for penalties for the wrongful withholding. A week later, September 26, 1963, appellant received appellee's mailed reply denying appellant's claim. Some three and a half months later, January 10, 1964, appellant's libel, asserting the impropriety of the deduction and demanding penalties under Section 596[1] of 46 U.S.C. was filed in the District Court.[2] Appellee answered the libel on February 19, 1964, in which it defended the propriety of the $43.02 deduction from appellant's wages. On April 1, 1964 appellee paid appellant $43.02 to terminate the running of the penalty period. Appellant then limited his claim for penalties to the period September 3, 1963–April 1, 1964. Summary judgment having been moved on July 9, 1964 and an affidavit in support thereof filed on December 10, 1964, the District Court in an opinion[3] and order of March 1, 1965, granted appellant's motion and assessed $570 damages.

■■■ This case thus concerns a claim to a statutory penalty for an alleged wrongful withholding from a seaman's wages. In such a case there are three pertinent questions for a court's consideration: (1) Was an improper deduction taken from a seaman's wages considering the limited statutory instances when a deduction by a ship is proper?[4]; (2) If a deduction were improper, was it "without sufficient cause" within 46 U.S.C. § 596 so that a penalty was triggered?[5]; and (3) If a penalty runs, what is the standard for the determination of its amount?

■■■ As to the first consideration, the District Court found, supported by appellee's concession thereof, that the withholding of the $43.02 for medical expenses from appellant's wages was contrary to law. It has been eminently clear in the law, at the very least since the Supreme Court case of Isbrandtsen Co. v. Johnson[6] in 1952 that a deduction from wages for medical expenses such as were incurred by appellee in the instant case is wrongful as falling outside the proper deductible instances enumerated in 46 U.S.C. § 701. This question, therefore, has been closed for some time.

Despite its finding that appellee's action in withholding the $43.02 from appellant's wages was neither arbitrary nor unscrupulous, the District Court did assess a penalty. Therefore, it must have answered the second question by con-

1. Congress has provided that:
   "* * * Every master or owner who refuses or neglects to make payment (of wages) in the manner hereinbefore mentioned *without sufficient cause* shall pay to the seaman a sum equal to two days' pay for each and every day during which payment is delayed beyond the respective periods, which sum shall be recoverable as wages in any claim made before the court * * *." 46 U.S.C. § 596 (1965). (Emphasis added.)

2. In an April 8, 1964 amendment to his libel appellant added a wage claim, asserting a wrongful and unlawful non-payment of wages from August 16, 1963 to September 3, 1963. This demand was included in appellant's summary judgment motion. The issue has, however, apparently dropped out of the case. It is neither dealt with in the District Court's opinion and order on the summary judgment motion nor has it been raised by appellant on appeal.

3. Swain v. Isthmian Lines, Inc., 239 F. Supp. 672 (E.D.Pa.1965).

4. These instances are set forth in 46 U.S.C. § 701 (1965) and are exclusive as to the propriety of any deduction from wages. Isbrandtsen Co. v. Johnson, 343 U.S. 779, 789, 72 S.Ct. 1011, 96 L.Ed. 1294 (1952).

5. It is well settled that the mere existence of an unlawful withholding does not, in and of itself, establish the absence of sufficient cause for that withholding. See Johnson v. Isbrandtsen Co., 190 F. 2d 991, 993 (3 Cir. 1951), aff'd, 343 U.S. 779, 72 S.Ct. 1011, 96 L.Ed. 1294 (1952); Chambers v. Moore McCormack Lines, 182 F.2d 747, 749 (3 Cir. 1950).

6. Supra note 4.

cluding that appellee, nevertheless, did not have sufficient cause to subtract the $43.02 from appellant's wages. Appellee does not contest before us the District Court's implicit finding of no sufficient cause for the wage deduction. Given the unmistakable clarity of the law at the time of the deduction, any successful contesting of the District Court's implicit finding on this point would certainly have been precluded in this case.

This brings us to the third inquiry, controlling within the facts of this case. What standard is determinative of the amount of the penalty to be assessed? The District Court employed an equitable yardstick to limit appellant's recovery to $570.[7] The question of how to measure the statutory penalties once an absence of sufficient cause for a wage deduction is determined is by no means of recent vintage, although, considering the age of the statutory provision involved, there are relatively few reported cases on the matter.[8] It is indeed a novel point of law for our court.

Section 596, the penalty provision at issue herein, states that once a master or owner withholds a seaman's wages without sufficient cause, the master or owner "*shall* pay to the seaman a sum equal to two days' pay for each and every day

during which payment is delayed * * * which sum shall be recoverable *as wages* in any claim made before the court * *."[9] This penalty provision has undergone certain evolutionary changes. As originally enacted the master or owner was liable to pay the seaman a sum *not more than* the amount of two days' pay for each day, not exceeding ten, during which the payment was delayed.[10] Such a provision left the courts with a significant latitude in setting the rate for which such a penalty would run. In 1898, Congress seemingly legislated this discretion out of the Shipping Commissioner's Act by amending the penalty provision to provide for the payment of a sum equal to one day's pay for each day during which payment was delayed without sufficient cause.[11] Finally, in 1915, the penalty rate was adjusted upward, Congress awarding two days' pay for each day of delay in wage payment by a master or shipowner without sufficient cause.[12] This penalty has remained in effect since that time.

The "not more than" form of penalty, which explicitly reposes in the judiciary a significant measure of discretion in tailoring penalties to the equities of each case, is the language found in many of the penalty provisions of the Shipping

7. Swain v. Isthmian Lines, Inc., supra note 3 at 674.

8. These appear to be the only reported cases focusing on, or dealing with in passing, this question, as distinguished from cases such as Collie v. Fergusson, 281 U.S. 52, 50 S.Ct. 189, 74 L.Ed. 696 (1930), concerned with the question of the existence or absence of sufficient cause for a wage deduction: McConville v. Florida Towing Corporation, 321 F.2d 162, 168 n. 11 (5 Cir. 1963); Caribbean Federation Lines v. Dahl, 315 F.2d 370, 374 (5 Cir. 1963); Southern Cross Steamship Co. v. Firipis, 285 F.2d 651, 656–658 (4 Cir. 1960); Prindes v. The S.S. African Pilgrim, 266 F.2d 125, 128–129 (4 Cir. 1959); Mavromatis v. United Greek Shipowners Corporation, 179 F.2d 310, 316 (1 Cir. 1950); Mystic S.S. Co. v. Stromland, 20 F.2d 342, 344–345, rehearing denied, 21 F.2d 607 (4 Cir.

1927); Kontos v. S.S. Sophie C., 236 F.Supp. 664, 674 (E.D.Pa.1964); Dahl v. The S.S. Amigo, 202 F.Supp. 890, 894 (S.D.Ala.1962); Spero v. Steamship The Argodon, 150 F.Supp. 1, 6 (E.D.Va. 1957); Samad v. The Etivebank, 134 F.Supp. 530, 542 (E.D.Va.1955); Forster v. Oro Navigation Company, 128 F.Supp. 113, 116–117 (S.D.N.Y.1954), aff'd, 228 F.2d 319 (2 Cir. 1955); The Victoria, 76 F.Supp. 54, 56 (S.D.N.Y.1947), rev'd on other grounds, Usatorre v. The Victoria, 172 F.2d 434 (2 Cir. 1949); The Chester, 25 F.2d 908, 911 (D.Md.1928); The Lake Galewood, 21 F.2d 987, 989 (D.Md.1927).

9. Supra note 1. (Emphasis added.)

10. 46 U.S.C. § 596 (1965) (codification explanation).

11. Ibid.

12. Ibid.

Commissioner's Act.[13] A few sections, however, such as Section 596 involved herein, speak in, what is on their faces, mandatory language, seemingly vesting no discretion in the judiciary to reduce the amount of the penalty to be computed in accordance with the statutory formula.[14] This court, in construing one of these apparently mandatory penalty provisions, Section 594, has characterized such a provision as one providing for damages "which have been liquidated by legislative enactment."[15] Despite this rather precise statutory directive, of those cases which we have uncovered, where the question—whether Section 596 of the statute may still be read with a measure of judicial discretion when supposed equitable considerations present themselves—was considered, all have found proper the balancing of the statutory language with a judicial sense of the equities of each case. The presence of this unanimity, however, has not eliminated discomfort occasionally felt by the courts in exercising such discretion. In Dahl v. The S.S. Amigo[16] the anomaly of this situation emerges from the following language of the court:

> "Although the statute would seem to indicate that the penalty provision should run until actual payment is in fact made, it appears to be the accepted rule of law that the time for which the penalty provision runs shall rest within the sound discretion of the court, depending upon and to be determined by the equities. * * * Upon review of the many cases holding that the penalty provision should run to various and different specified periods of time, *it appears that an effort should be made to stabilize this feature of the penalty wage statute.* Unless the particular equities in the given case would

dictate otherwise, I believe the rule should be that the penalty provision shall run until such time as the libellant with the exercise of due diligence could have brought his action on to be heard in court."

In essence, though the *Dahl* court recognized the imperative feature of the statute, and was uncomfortable in adding to it, the urge to superimpose equitable considerations upon it was not restrained.

Where have the federal courts, with such unanimity, derived the authority to intrude equitable considerations into their reading of Section 596? The early case of Mystic S.S. Co. v. Stromland,[17] the later case of Mavromatis v. United Greek Shipowners Corporation,[18] and the more recent case of Southern Cross Steamship Co. v. Firipis,[19] all have relied on the Supreme Court's ruling in Pacific Mail S.S. Co. v. Schmidt,[20] as the source of their authority to exercise discretion in the interpretation of Section 596. Other cases have relied on these intermediate court decisions and there is now a solid net of precedent in support of the exercise of such discretion. *Pacific Mail* does, however, appear to be the considered foundation for such precedents. As it seems to be the only Supreme Court ruling relating to the issue, an examination of it is desirable.

In *Pacific Mail*, the seaman, at the conclusion of a foreign voyage, was paid in full on September 24, 1913 and that date noted as the date of the termination of the voyage. The seaman, however, remained on board working until, on October 1, 1913, he was notified of his discharge. On his demanding his wages for those services on board ship while in port, the seaman was told that silverware to the amount of $32.90 was miss-

---

13. See, 46 U.S.C. §§ 546, 562, 563, 567, 568, 571, 577, 599, 623 (1965).

14. See, 46 U.S.C. §§ 575, 576, 578, 594 (1965).

15. Newton v. Gulf Oil Corporation, 180 F. 2d 491, 494 (3 Cir.), cert. denied, 340 U.S. 814, 71 S.Ct. 42, 95 L.Ed. 598 (1950).

16. Supra note 8. (Emphasis added.) See The Victoria, supra note 8.

17. Supra note 8.

18. Supra note 8.

19. Supra note 8.

20. 241 U.S. 245, 36 S.Ct. 581, 60 L.Ed. 982 (1916).

ing, that he was accountable for it, and that this sum was greater than that of $30.33, his wages due and owing. No wages were paid. Such withholding was found by the courts to be "without sufficient cause." The District Court assessed penalties up to the date of its entry of a final decree. The Court of Appeals allowed penalties from that date to its affirmance of the District Court's decree. The case then went to the Supreme Court.

The shipowner argued that penalties were inappropriate and should not be applied at all, not because there were countervailing equities or because the withholding was with sufficient cause, but because the penalty provision was in a statute dealing with voyages and did not apply to wages accumulated by labor disassociated from a voyage, as was this seaman's work effort. Justice Holmes, in speaking for a unanimous Supreme Court, and though approving the application of penalties, emphasized the closeness of the question of whether the penalty provisions should apply at all to an unwarranted deduction from wages for work performed outside the course of a voyage. The only issue, as the Supreme Court saw it, was whether penalties could then run *after* the entry of a District Court's decree. The Court ruled that the date of the District Court's decree terminated the running of the penalty provision, for the appeals taken by the shipowner from that adverse District Court determination were based upon a reasonable ground in believing that the appellate courts would rule that the penalty provision was not at all applicable to post-voyage labor. The decision explicitly speaks of "sufficient cause for the neglect to pay after the decree of the district court." [21] The Supreme Court thus found it unnecessary to consider whether, under other circumstances, "there would be any escape from Massachusetts v.

West. Un. Tel. Co." [22] which seemed to indicate that under any circumstances the penalties would terminate with the District Court's decree.

*Pacific Mail* is sui generis and does not, as urged by the appellee, stand for the bald proposition that the judiciary has authority to exercise discretion in adjusting admittedly applicable penalties accruing during the period prior to the entry of a District Court's decree. Indeed, the converse of a right to exercise discretion in the name of equitable considerations may be gleaned from *Pacific Mail,* for despite the fact that the question of the applicability of the penalty provision was such a close one, the Supreme Court did not see fit to remand the cause to the District Court for consideration of this factor for the purpose of mitigating the penalties which had accrued prior to entry of the District Court's decree. Therefore, as we see it, *Pacific Mail* is in no way a foundation upon which the subsequent cases, noted above, may rest.

We must now inquire whether there is a reasonable independent basis sanctioning judicial discretion to tailor the penalty provision of Section 596 to the equities of a particular case. The District Court considered the equitable basis to be found in the following factors:

"* * * [L]ibellant had contracted a dangerous and virulent disease, apparently—although we do not so decide—through his own misconduct. Proper regard for the health and safety of the ship's company, as well as libellant himself, dictated prompt remedial measures. Respondent's expenditure undeniably enured to libellant's own benefit." [23]

The appellee also stresses, as one basis for affirmance, these factors.

21. Id. at 250, 36 S.Ct. at 583.

22. 141 U.S. 40, 11 S.Ct. 889, 35 L.Ed. 628 (1891). See Pacific Mail S.S. Co. v. Schmidt, supra note 20 at 251, 36 S.Ct. at 583.

23. Swain v. Isthmian Lines, Inc., supra note 3 at 674.

In none of the above mentioned cases did the issue of equitable discretion turn on factors surrounding the motivation of a shipowner in making a wage deduction. There is, however, a somewhat oblique concern as to the desirability of such factors being weighed in Mystic S.S. Co. v. Stromland [24] where, in the opinion denying rehearing, it was stated:

> " * * * It was certainly not the intention of Congress that the statute should be construed in such way as virtually to deny to shipowners the right to contest liability in cases of this sort, by making the penalties so great in case of failure to maintain the defense asserted as to deter them from making any defense at all."

The answer to this concern, however, is not to consider equitable factors in mitigation of the statutory penalty. Such factors are those which were meant to be considered by a court in determining only whether there was an absence of sufficient cause for the wage deduction. If these equitable considerations carry the day on that issue, no penalty will be assessed at all. When Congress chose not to legislate a penalty for all cases in which the deduction was legally wrongful, as falling outside the categories in 46 U.S.C. § 701, it meant to have the equitable considerations—those separate and apart from the legal impropriety of the deduction—weighed in determining whether the Section 596 penalty should be applied. Thus, when such considerations *fail* to establish the existence of sufficient cause for the deduction under Section 596, those same equitable considerations may not be reevaluated when the assessment of the penalty is considered. Any other conclusion would certainly misplace such equitable considerations in the statutory scheme.

Appellee does stress an alternative point, however, a point which has appeared in a few of the cases [25] approving use of equitable considerations in mitigating the statutory penalty. The period of three and a half months between the time of appellee's formal denial of appellant's claim, September 26, 1963, and his bringing suit, January 10, 1964, is urged as inordinate delay prejudicial to the appellee, for which the District Court might properly have reduced the penalty. Aside from the fact that it would not justify as substantial a reduction as the District Court made, we do not think that the time in which a libellant brings his suit should have any bearing on the amount of the penalty assessed. As is recognized by all the parties here, Section 596 seeks to deter a master or shipowner from improperly making a deduction from a seaman's wages. The section provides that the penalty "shall be recoverable as wages in any claim made before the court." Such wage recovery is only limited by the running of the applicable statute of limitations and such a rule should, as applied to the assessment of penalties, run parallel. Delay by a seaman in his instituting suit will not place an oppressive burden on a shipowner. After all, if sufficient cause for the deduction is found to be lacking, the shipowner or his agent has either been overtly culpable in reducing a seaman's wages, or significantly inattentive in his duties vis-à-vis the seaman's wage rights. As we view it, it is precisely the possibility that large penalties will accrue that should motivate a shipowner to exercise care in computing wages due a seaman. We think that this deterrent was what Congress had in mind in providing for a penalty in the form of inflexible liquidated damages.[26]

24. Supra note 8.

25. Mystic S.S. Co. v. Stromland, supra note 8; Dahl v. The S.S. Amigo, supra note 8; The Lake Galewood, supra note 8.

26. The textual discussion above is dispositive of this appeal. However, of those cases set forth in note 8 supra, by far the larger number deal with two problems not at issue herein. As some of these cases have been relied upon by both the District Court and the appellee, a brief mention of these two matters seems appropriate.

The absence of a demand for wages by a seaman has been an equitable consideration having a bearing on the amount of the penalty assessed. In McCrea v.

In conclusion, as was aptly stated in the dissenting Court of Appeals opinion in *Pacific Mail*,[27] upon considering the penalty provision of Section 596:

" * * * as to the severity of the penalty, there is, of course, no thought of suggesting that a court can properly decline to enforce a statute because it may seem to be unnecessarily harsh."

In our view, those cases supporting the superimposition of equitable concepts onto Section 596 have, in fact, mitigated the statutory penalty in the name of the alleviation of supposed unnecessary harshness. We have concluded that these cases rest on no firm precedents, that such alleged harshness is illusory, that there is no compelling independent reason to lessen the statutory penalty case by case and, therefore the language of Section 596 must be read as a mandatory command to the judiciary. Thus the judgment of the United States District Court for the Eastern District of Pennsylvania will be affirmed to the extent that it grants judgment in favor of James W. Swain, Jr., the appellant herein, but in so far as it fixes the amount of that judgment in the sum of $570 it will be vacated and the case remanded to the District Court for the purpose of

assessing the damages in conformity with this opinion, reflecting the computation of penalties from September 3, 1963 to April 1, 1964.

---

United States, 294 U.S. 23, 30–31, 55 S. Ct. 291, 79 L.Ed. 735 (1935), the failure to demand, under the peculiar facts of the case, went to the issue of whether sufficient cause existed, in the first instance, for the deduction. That case has no bearing on whether, once sufficient cause is found to be absent, a failure to demand may serve to mitigate the statutory penalty. As has been discussed in the text above, a wage deduction will be found to be without sufficient cause if a shipowner or his agent has been overtly culpable in reducing a seaman's wages, or significantly inattentive in his duties vis-à-vis a seaman's wage rights, such conduct providing a shipowner with notice of the transgression of his obligations to a seaman. Under such circumstances, Congress could not have intended that a demand for wages by a seaman should be a factor in mitigation of the statutory penalties.

A number of cases cited in note 8 supra, mitigate the statutory penalty if a seaman, once a libel has been filed, has not been diligent in expediting disposition of the case. We do not believe that Congress meant to leave to the judiciary discretion in judging such a seaman's conduct in mitgation of the statutory penalty. Indeed, in our view, the most adequate protection a shipowner has against accumulating penalties once a libel is filed is to place in the hands of the court the allegedly unlawfully withheld wages. A similar approach was taken and made mandatory in Southern Cross Steamship Co. v. Firipis, supra note 8. Such a fund will terminate the running of the penalties as of the date of its creation, just as appellee's actual payment of appellant's wages on April 1, 1964 terminated the running of the penalty provision.

27. Pacific Mail S.S. Co. v. Schmidt, 214 F. 513, 521 (9 Cir. 1914), rev'd, 241 U.S. 245, 36 S.Ct. 581, 60 L.Ed. 982 (1916).