### PACIFIC MAIL S. S. CO. v. LUCAS.*

(Circuit Court of Appeals, Ninth Circuit. May 3, 1920.)

No. 3425.

1. Seamen ⬤⟞12—Discharge must be called to seaman's attention to be effective.

Under Rev. St. §§ 4550–4552 (Comp. St. §§ 8339–8341), relating to the discharge of seamen, a discharge, to be binding on a seaman who had been ill and on reaching a port before end of voyage requested a seaman's permit to go to a hospital, must be called to the seaman's attention.

2. Seamen ⬤⟞26—Evidence held to warrant finding that discharge was not called to seaman's attention.

On libel by a seaman, who had become ill during the voyage and gone ashore under a hospital permit, evidence *held* to warrant a finding that he neither sought nor desired a discharge, but was only asked to sign for his wages, and hence the discharge signed was ineffectual.

---

⬤⟞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
*Rehearing denied September 7, 1920.

**3. Seamen ⊙⟶16—Seaman falling sick on voyage is entitled to full wages and necessary expenses of cure.**

A seaman, having fallen sick on a voyage, is entitled to recover his full wages for the trip for which he was engaged and the necessary expenses incurred in his cure, though he went to a hospital on reaching a port before end of voyage.

Appeal from the District Court of the United States for the First Division of the Northern District of California; Maurice T. Dooling, Judge.

Libel by J. Lucas against the Pacific Mail Steamship Company. From a decree for libelant, respondent appeals. Affirmed.

Charles J. Heggerty and Knight & Heggerty, all of San Francisco, Cal., for appellant.

Albert Michelson and Herbert Chamberlin, both of San Francisco, Cal., for appellee.

Before GILBERT and HUNT, Circuit Judges, and WOLVERTON, District Judge.

GILBERT, Circuit Judge. On February 18, 1919, the appellee signed shipping articles for a voyage from San Francisco to Hongkong and other points in the Orient and return to San Francisco as a port of final discharge. His wages were to be $75 a month. In his libel he alleged that while prosecuting the voyage he fell sick and was sent to a hospital at Honolulu; that the vessel continued on said voyage, leaving him on shore at said hospital; that while he was at Honolulu he was compelled to pay for his subsistence $44 and for medical attendance $25; and that there was still due him $150 for wages from February 25 to April 25, the date when the voyage was completed, and he asked that he be awarded $219. The court below awarded him $219, with interest and costs. From that decree the appeal is taken.

The court below in its opinion said:

"The libelant was ailing when he left the ship at Honolulu, the ship's doctor and the master were willing that he should go to the marine hospital there, and the master gave him the necessary permit. He neither sought nor desired a discharge, and says that he was only asked to sign for his wages which he received. There is no reason to believe that he was malingering, and I see no reason why this case does not come within the general rule."

The appellant contends that, as the evidence was presented by depositions, the finding of the trial court has not the finality which it would have, if the testimony had been taken in open court, and that the evidence shows that the appellee feigned illness, and that he was finally discharged on February 25, 1919, at Honolulu, and it is urged that after that date the appellant was not responsible for further wages or for expense of cure or maintenance. The evidence does not convince us that the appellee feigned illness. The testimony of the doctor is that, after the voyage commenced, the appellee complained of illness; that the doctor was of the opinion that he had neuralgia of the head and face, although the doctor had no further knowledge

⊙⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

of his illness than that which he received from the appellee's statement; he gave the appellee medicine on several occasions, and reported to the captain that the appellee was sick, and told the appellee two or three times that he had better lay off two or three days, and he would get well quicker; "but," said the doctor, "he seemed ambitious to work, and did not do it." When the vessel reached Honolulu, and the appellee expressed his desire to go to a hospital there for treatment, the master gave him the certificate of service of sick or injured seamen, furnished by the United States Public Health Service. The appellee was in the marine hospital at Honolulu two days, when he was "discharged improved." The "clinical report" for the hospital shows that he was "sent to out-patient office for further treatment."

[1, 2] The principal question is whether it was error to hold that the appellee was not discharged at Honolulu before going to the hospital. At that time he and the master signed before a shipping commissioner a mutual release, as prescribed by Rev. St. § 4552 (Comp. St. § 8341). That section and the two sections which precede it (Comp. St. §§ 8339, 8340) prescribe the method of discharge of seamen. They require the master, not less than 48 hours before paying off or discharging any seaman, to deliver to him or to a shipping commissioner a full and true account of all his wages and all deductions, etc.; that upon the discharge of the seaman, or the payment of his wages, the master shall sign and give him a certificate of discharge; and that, upon the completion of any discharge before a shipping commissioner, the master and the seaman shall, in the presence of the commissioner, sign a mutual release of all claims for wages in respect of the past voyage.

The purser testified that on arriving at Honolulu the appellee came to his office and said he wanted to get his money, and get paid off at Honolulu, and go ashore, and asked for a sick seaman's permit to go to a hospital; that he (the purser) took the log book, with sufficient money to pay the appellee in full in case the captain decided to discharge him, and went over to the custom house with it, and the captain came in, and "we paid Lucas his money before the shipping commissioner, and he went ashore there." The captain testified that the appellee asked to be paid off, and "we paid him off at his own request."

"Q. Will you narrate the conversation that took place in the shipping commissioner's office in detail in Honolulu? A. That is a kind of a hard thing to do. It is a long time ago. Q. Was it explained before the commissioner that Lucas wanted to be discharged from the ship? A. Yes; the commissioner knew about it. Q. What did Lucas say? A. I don't remember. Q. Do you remember what you said? A. I said I would pay him off."

The appellee testified that he was ill and suffering, and that he asked the purser for a permit to go ashore and to a hospital at Honolulu, and that the purser said that the captain would give him a permit at the custom house; that at the custom house he was told to sign for his money, his wages from San Francisco to Honolulu; and that he signed for $24.50. He denied positively that he had signed a release.

On cross-examination he was asked if he knew what kind of a book he was signing, and answered:

"The only thing I know is I was told to sign for the receipt of wages from Frisco to Honolulu. * * * I signed the paper for my wages. I don't know if the gentleman was a shipping commissioner or not. I never saw the man's face before. He called me over; he called me by name; he said, 'Lucas, come here and sign for your wages.' I never asked anybody for my wages, either."

In Rosenberg v. Doe, 146 Mass. 191, 15 N. E. 510, it was held no defense that the plaintiff did not know the contents of the "mutual release," and signed it thinking it a mere receipt for money received. "We are of the opinion," said the court, "that the statute means to make the release conclusive, if it is executed and attested as required, without fraud or coercion." And the court observed: "The common law makes no exception to these principles in favor of seamen." While this is true of the common law, it does not express the rule of admiralty practice. In admiralty the release is only conclusive when entered into voluntarily and with full knowledge of the seaman's rights. Judge Story, in Brown v. Lull, 2 Sumner, 443, Fed. Cas. No. 2018, held that the execution of instruments by seamen cannot be sustained unless it shall appear that they were fully explained and understood by the seamen. He said:

"Seamen are a class of persons remarkable for their rashness, thoughtlessness, and improvidence. They are generally necessitous, ignorant of the nature and extent of their own rights and privileges, and for the most part incapable of duly appreciating their value."

In Jackson v. White, 1 Pet. Adm. 179, Fed. Cas. No. 7151, it was held that misconception and mistake in executing a release are open to inquiry. Cases applying these principles are The Bark Rajah, 1 Spr. 199, Fed. Cas. No. 11538; The David Pratt, 1 Ware, 509, Fed. Cas. No. 3597; The Ship Ringleader, 6 Ben. 400, Fed. Cas. No. 11850; Harden v. Gordon, 2 Mason, 541, 556, Fed. Cas. No. 6047. There is no evidence that the appellee read the instrument which he signed, or that its contents were explained to him, or that he received a discharge, or that the word "discharge" was ever mentioned in his presence. No deposition was taken of the commissioner. The captain's testimony is vague, and that his memory was not reliable is shown by the fact that he denied that he had knowledge of the appellee being sick during the voyage, while the doctor's daily report shows that the appellee's illness was duly reported to him. Considering all the circumstances, we are not convinced that the trial court was in error in finding that the appellee neither sought nor desired a discharge, but was only asked to sign for his wages.

[3] The appellee, having fallen sick on the voyage, was entitled to recover his full wages for the trip for which he was engaged, and the necessary expense incurred in his cure. Longstreet v. The R. R. Springer (D. C.) 4 Fed. 671, and cases there cited; The Osceola, 189 U. S. 158, 175, 23 Sup. Ct. 483, 47 L. Ed. 760; The Bouker No. 2, 241 Fed. 831, 154 C. C. A. 533.

The decree is affirmed.