## THE CORAPEAK.

### RICKSON v. VELAZQUEZ.

No. 3076.

Circuit Court of Appeals, Fourth Circuit.
Jan. 13, 1931.

Braden. Vandeventer, of Norfolk, Va. (Vandeventer, Eggleston & Black, of Norfolk, Va., on the brief), for appellant and cross-appellee.

Jacob Louis Morewitz and Morewitz & Morewitz, all of Newport News, Va., for appellee and cross-appellant.

Before PARKER and NORTHCOTT, Circuit Judges, and WILLIAM C. COLEMAN, District Judge.

NORTHCOTT, Circuit Judge.

This is a libel brought by one Benigno Velazquez, a naturalized American citizen, born in Porto Rico, against the steamship Corapeak. The libelant, who was a fireman, claimed to have been injured on the vessel while it was lying off Newport News, and the injury occurred while libelant, who was off duty, was engaged in showing a green hand coal passer how to work an ash ejector. The injury evidently occurred because of the action of the coal passer in turning the steam into the machine at the wrong time. The injury consisted of a bruise on the arm, and seems to have been of no great importance, as neither the skin nor bones were broken. The injured man was promptly given medical attention on board the ship, and was tendered a hospital certificate admitting him to the Norfolk Marine Hospital, free of charge, and was offered a taxi to take him to the hospital boat.

The injury occurred on the morning of May 4, and wages were due libelant from the 1st of May, at the rate of $67.50 per month. At the time libelant left the boat he was tendered $10.13, which was found by the judge below to be the correct amount due him for wages, and was requested to sign the portage bill, which contained no other condition than that it was for "whole wages." Libelant refused to sign the portage bill and was not paid.

Libelant entered a private hospital and was treated for his injury. Negotiations were entered into by libelant through his proctor, looking to a settlement of his claim against the ship, but these negotiations failed, and the libelant brought this proceeding.

The court below rejected libelant's claim for damages for injury and allowed him one month's wages, amounting to $67.50, for maintenance and cure. The court also held that at the conclusion of the negotiations for settlement the libelant should have been paid the wages due, and allowed libelant the sum of $544.50 as double pay for the withholding of wages under section 4529, Rev. St., as amended by Act March 4, 1915, § 3 (46 USCA § 596), from which action of the court below this appeal was brought. Libelant filed a cross-appeal.

This court has had occasion to discuss the question of withholding seamen's wages in numerous cases, a résumé of which will be found in the Lake Gaither, 40 F.(2d) 31. A reading of these decisions will show that it has been repeatedly held that no condition may be imposed on tender of wages due, but in this case we find a tender made of all wages due with no other condition attached than that a receipt be given for "all wages," a receipt which the captain of the ship certainly had a right to demand upon payment. The record discloses nothing was demanded of the seaman other than he sign a receipt, and further discloses that at the conclusion of the negotiations for settlement no direct demand was ever made by the seaman or his proctor for the payment of this amount. Having once made a proper tender

the captain of the ship was certainly under no obligations to repeat the tender in the absence of a direct demand for payment, and we are of the opinion that the judge below was in error in allowing libelant any waiting time.

In Collie v. Fergusson, 281 U. S. 52, 50 S. Ct. 189, 191, 74 L. Ed. 696, heard by the Supreme Court on certiorari for this court, in an able opinion discussing the question of waiting time, Mr. Justice Stone lays down the proper principles to be applied, and among other things says:

"The phrase 'without sufficient cause' must be taken to embrace something more than valid defenses to the claim for wages. Otherwise, it would have added nothing to the statute. In determining what other causes are sufficient, the phrase is to be interpreted in the light of the evident purpose of the section to secure prompt payment of seamen's wages (H. R. Rep. 1657, Committee on the Merchant Marine and Fisheries, 55th Cong., 2d Sess.), and thus to protect them from the harsh consequences of arbitrary and unscrupulous action of their employers, to which, as a class, they are peculiarly exposed. The words 'refuses or neglects to make payment * * * without sufficient cause' connote, either conduct which is in some sense arbitrary or willful, or at least a failure not attributable to impossibility of payment. We think the use of this language indicates a purpose to protect seamen from delayed payments of wages by the imposition of a liability which is not exclusively compensatory, but designed to prevent, by its coercive effect, arbitrary refusals to pay wages, and to induce prompt payment when payment is possible. * * *

"That the liability is not incurred where the refusal to pay is in some reasonable degree morally justified, or where the demand for wages cannot be satisfied either by the owner or his interest in the ship, has been the conclusion reached with practical unanimity by the lower federal courts."

Here there was no arbitrary refusal to pay, but, on the contrary, there was a tender of all wages due with no improper condition attached.

With respect to the damages suffered by the libelant and his claim for maintenance and cure, we are of the opinion, from the evidence, that $150 would be a liberal recompense to him on these items.

The decree of the court below will be modified so as to allow libelant the said sum of $150, together with the $10.13 due as wages,

and the costs of this appeal will be equally divided between the parties.

Modified.