## GOLD v. MATSON NAV. CO.
### No. 7420.

Circuit Court of Appeals, Ninth Circuit.
Nov. 26, 1934.

H. W. Hutton, of San Francisco, Cal., for appellant.

Herman Phleger, Maurice E. Harrison, Moses Lasky, and Brobeck, Phleger & Harrison, all of San Francisco, Cal., for appellee.

Before WILBUR, SAWTELLE, and GARRECHT, Circuit Judges.

WILBUR, Circuit Judge.

The libelant and appellant filed his libel in the District Court of the United States for the Northern District of California based upon a claim for three days' pay amounting to $4.75, together with $449.64 penalties under Rev. St. § 4529, as amended (46 USCA § 596), for waiting time. From a decree denying the penalties, libelant has appealed.

On the morning of March 22, 1933, appellant was employed as an able-bodied seaman on the appellee's vessel the Lurline for the voyage from Hongkong to San Francisco. The ship was due to sail at noon of that day, and because of lack of time the shipping articles were not signed by appellant before the United States Consul in Hongkong, as is the regular practice, but the Consul authorized the signing of the shipping articles on board the ship before the purser, by the appellant, to be certified by the United States Consul in Shanghai when the ship arrived at that port. The next day while the vessel was under way appellant refused to sign the shipping articles saying that there was dissension among the members of the crew and that the food was poor and he did not want to make the trip across the Pacific on the Lurline under those conditions. When the vessel arrived in Shanghai on March 24, appellant demanded three days' pay and said he was going to leave the ship. He was referred to the American Consul in Shanghai and appellant and the captain and the purser of the Lurline met in the Consul's office to discuss the matter. The purser had with him the $4.75 to pay appellant in case the Consul ruled that that should be done. There is some conflict in the evidence as to what transpired in the Consul's office, but the trial court found the facts to be, and we think rightly, that: "* * * the Captain took the position that he was governed by the shipping articles and since libelant had not signed them, he would not be warranted in paying him. The libelant offered to sign the articles, if the captain would promise to pay him off. The captain told him if he signed, he took his chances in that regard, adding, however, that he would abide the Consul's ruling. The Consul ruled that the libelant 'had no case.'" With the Consul's permission the captain left without paying appellant and the vessel proceeded on its voyage leaving appellant behind. Appellant arrived in San Francisco on July 24, 1933, and on July 31, 1933, again demanded his three days' pay, but was told that he would have to wait until the Lurline came in as the appellee had no record in the office of the company of his employment. The Lurline arrived in San Francisco on Saturday, August 12, 1933, and appellant immediately demanded his pay. After some delay he was asked to get a letter from the Shipping Commissioner authorizing the payment because it was a very unusual case and the appellee desired to protect itself. On the following Monday appellant obtained the letter from the Shipping Commissioner and presented the same to the cashier of appellee company, but was told that he would have to get a letter from Mr. Galligher, the operating manager. Appellant saw Mr. Galligher, who did not give appellant a letter but told him to go back to the cashier and he would call the cashier by telephone and instruct her to pay him. Thereafter on the same day, August 14, 1933, appellee offered to appellant the $4.75 claimed by him, which offer he refused, stating that he had been abused and thought he was entitled to "compensation." He made no demand at that time, but stated he would have to see an attorney. This libel was filed shortly thereafter.

Rev. St. § 4529, as amended (46 USCA § 596), under which appellant claims penalties for waiting time, is as follows: "§ 596. Time for payment. The master or owner of any vessel making coasting voyages shall pay to every seaman his wages within two days after the termination of the agreement under which he was shipped, or at the time such seaman is discharged, whichever first happens; and in case of vessels making for-

eign voyages, or from a port on the Atlantic to a port on the Pacific, or vice versa, within twenty-four hours after the cargo has been discharged, or within four days after the seaman has been discharged, whichever first happens; and in all cases the seaman shall be entitled to be paid at the time of his discharge on account of wages a sum equal to one-third part of the balance due him. Every master or owner who refuses or neglects to make payment in the manner hereinbefore mentioned without, sufficient cause shall pay to the seaman a sum equal to two days' pay for each and every day during which payment is delayed beyond the respective periods, which sum shall be recoverable as wages in any claim made before the court; but this section shall not apply to masters or owners of any vessel the seamen of which are entitled to share in the profits of the cruise or voyage."

Under this statute in order for a seaman to recover for waiting time, it must appear that the refusal or neglect to pay his wages was "without sufficient cause." In O'Hara v. Luckenbach S. S. Co., 16 F.(2d) 681, 682, this court held that the phrase "without sufficient cause" as used in this statute should be construed as equivalent to "without reasonable cause." In Collie v. Fergusson, 281 U. S. 52, 55, 50 S. Ct. 189, 191, 74 L. Ed. 696, the Supreme Court, in construing this statute, stated: "But the increased payment for waiting time is not denominated wages by the statute, and the direction that it shall be recovered as wages does not purport to affect the condition prerequisite to its accrual that refusal or neglect to pay shall be without sufficient cause. The phrase 'without sufficient cause' must be taken to embrace something more than valid defenses to the claim for wages. Otherwise, it would have added nothing to the statute. In determining what other causes are sufficient, the phrase is to be interpreted in the light of the evident purpose of the section to secure prompt payment of seamen's wages (H. R. Rep. 1657, Committee on the Merchant Marine and Fisheries, 55th Cong., 2d Sess.), and thus to protect them from the harsh consequences of arbitrary and unscrupulous action of their employers, to which, as a class, they are peculiarly exposed."

The real disagreement between appellant and the captain of the Lurline was as to whether or not appellant was bound to sign the shipping articles in accordance with his oral agreement and, if he did not sign the shipping articles, whether appellant was entitled to his wages earned up to that time. The captain of the vessel in good faith submitted the matter to the American Consul in Shanghai and offered to abide by his ruling. He was prepared to pay the amount fixed by the Consul. This relieves him of any charge of arbitrariness. The Alice B. Phillips (D. C.) 106 F. 956; The Silver Shell (D. C.) 255 F. 340. The Consul ruled in favor of the captain, and it cannot be said that the refusal to pay appellant's wages at that time was without reasonable cause. In Shanghai appellant left the ship voluntarily, and, had he signed the shipping articles in Hongkong before the Consul, would have been a deserter. The appellee was justified in following the ruling of the American Consul at Shanghai. It cannot be said that the refusal to pay appellant during the period from July 31, 1933, when he first demanded his wages at the San Francisco office of appellee, until August 14, 1933, when his pay was offered to him and he refused it, was without reasonable cause. In again submitting the question of its liability to the Shipping Commissioner in San Francisco appellee was acting reasonably and its tender of the amount due on the same day the award was made and the appellee was notified of the Shipping Commissioner's award was a sufficient compliance therewith to avoid the statutory penalty. There is no evidence showing a change in the status of the parties between the time of the ruling of the Consul in Shanghai and the time of the Shipping Commissioner's award.

It is conceded by appellee that appellant is entitled to $4.75, and in its answer appellee alleged its tender of that amount and further that it "still offers to pay said libelant the sum of $4.75." In view of this fact, appellee claims that it was error for the District Court to award costs to appellant. In The Lily, 69 F.(2d) 898, 900, this court said: "In admiralty the matter of costs rests in the discretion of the trial court and very wide latitude has been exercised. In the absence of a clear abuse of that discretion the trial court's determination will not be disturbed on appeal. The Maggie J. Smith, 123 U. S. 349, 356, 8 S. Ct. 159, 31 L. Ed. 175; The Lyra (C. C. A.) 255 F. 667; Benedict on Admiralty (5th Ed.) vol. 1, p. 520."

Appellee has not shown an abuse of discretion on the part of the trial court and its award of costs to appellant will not be disturbed.

Decree affirmed.