## MARTINEZ v. MATSON S. S. CO. et al.
### No. 8639.

Circuit Court of Appeals, Fifth Circuit.

May 28, 1938.

Arthur J. Mandell, of Houston, Tex., for appellant.

J. C. Hutcheson, III, of Houston, Tex., for appellees.

Before FOSTER, SIBLEY and HOLMES, Circuit Judges.

HOLMES, Circuit Judge.

This is a libel in personam by a former seaman on the steamship Makiki against its owner and operator, Matson Steamship Company. From a final decree for the libellant for less than the amount claimed as to one item, and denying others altogether, he prosecutes this appeal, assigning numerous errors. The appellee seeks to modify the decree by cross-assignments of error. The case was heard by the trial court partly on depositions and partly on oral testimony.

On February 5, 1936, appellant, Miguel Martinez, signed as a fireman on the Makiki, from San Pedro, California, for a foreign voyage of six months at wages of $62.50 per month and sustenance. About May 13, 1936, while the ship was at sea, he became ill after eating, but there is no evidence that the food was unwholesome. Such remedies as were available on board were given him, and on May 14, 1936, when the ship arrived at Balboa, he consulted the marine physician, having been sent ashore by the master. This physician thought his illness due to heat, and pre-

scribed for him. Upon his return to the ship, he was excused from duties during such time as he so requested, and continued to be more or less ill on the voyage.

Arriving at Houston on May 22, 1936, he was given a hospital certificate, and permitted by the master to go ashore to consult a doctor. He went at once to the U. S. Public Health Physician, who, after an examination, ordered him to the Marine Hospital at Galveston. He went there and was told that he would have to remain in the hospital for treatment. On the same day, he returned to the ship, which was anchored in the channel at Houston, for the purpose of obtaining his wages and clothing. The ship owed him at the time a balance of $123.93, as wages to that date. The master was not aboard, and, after waiting some hours for him, appellant explained the situation to the first assistant engineer, and obtained permission to take his clothing and return to the hospital.

The engineer gave him an employee's package permit to be surrendered to the gate-keeper. Thereupon, appellant took his clothing and returned to the Marine Hospital, expecting to go back to the ship about nine o'clock A. M. the next day to see the captain with respect to his wages; but the ship sailed at daybreak the next morning. In June, 1936, he called on the ship's agent in Houston with respect to his wages; but such agent had no information on the subject and did nothing except have some correspondence about the matter with the owner of the ship. There was no one else to whom he could apply.

The court below was convinced that appellant was sick at the time of the trial, and that he had been so continuously since he became ill on the date mentioned. There was a radical disagreement between doctors, all eminent physicians, as to what was the matter with him. Appellant's doctors seemed to think that he had ulcers of the stomach. The doctors introduced by appellee were of opinion that he had chronic appendicitis if anything. The district judge said he might have neither, and that it was unnecessary to make a specific finding on the subject; but he did find that, whatever the nature of his malady, it had its beginning on the ship on May 13, 1936, when he became ill.

On the morning of May 23, 1936, when the ship sailed from Houston, the master thereof had not been told by the first assistant engineer that the appellant had left the ship for the purpose of going to the hospital for treatment, and marked him as a deserter or as absent without leave. The trial court found that he was neither; that he did not abandon his employment; but that he left the ship only because his physical condition made it necessary for him to do so in order to consult a doctor, who sent him to the Marine Hospital for treatment. The court concluded that Martinez should recover from the Matson Steamship Company what was due him at the time he left the ship, amounting to $123.93, the sum of $156.25 as wages to the end of the voyage, and the further sum of $350 for maintenance and cure. Claims for overtime and for double wages were denied.

We find no basis of support for either the assignments of error or the cross-assignments. No complaint is made of the first item, which awarded payment of wages to the time libellant left the ship. Penalties provided by the statute (46 U.S.C.A. § 596) were properly disallowed because the failure of the master to pay him his wages did not appear to be arbitrary or unreasonable. Collie v. Fergusson, 281 U.S. 52, 50 S.Ct. 189, 74 L.Ed. 696; McCrea v. United States, 294 U.S. 23, 55 S.Ct. 291, 79 L.Ed. 735; The A. I. Baker, 6 Cir., 76 F.2d 871, certiorari denied, Wright v. Ayer & Lord Barge Co., 296 U.S. 602, 56 S.Ct. 118, 80 L.Ed. 426; The Corapeak, 4 Cir., 46 F.2d 262; Gold v. Matson Navigation Company, 9 Cir., 73 F.2d 808; The New Jersey, D. C., 31 F.2d 115, affirmed, 5 Cir., 31 F.2d 116.

Since appellant was not a deserter, or absent without leave, and did not elect to treat his employment on the Makiki as at an end, but became ill as stated, he is entitled to recover his wages to the end of the voyage. Such wages are recoverable as an incident to the maritime contract. The Osceola, 189 U.S. 158, 23 S.Ct. 483, 47 L. Ed. 760; Pacific Mail Steamship Company v. Lucas, 9 Cir., 264 F. 938; Great Lakes Steamship Company v. Geiger, 6 Cir., 261 F. 275.

The real controversy involved in this appeal is over the item of $350 allowed for maintenance and cure after the end of the voyage, the appellant asserting that the amount was inadequate, and the appellee that any such award was wholly improper. Under the evidence, we do not feel justified in increasing the amount of this item. As to the cross-assignment of error, that it is

wholly unwarranted by the maritime law, our task has been made easy by the recent decision of the Supreme Court in Calmar Steamship Corporation v. Taylor, 58 S.Ct. 651, 82 L.Ed. ——, decided March 28, 1938. In view of the opinion cited, which was rendered shortly before the instant case was argued before us, it would be supererogation to discuss the doctrine so clearly announced therein. The court said (page 653):

"In The Osceola, supra, this Court reserved the point whether the duty of maintenance and cure extends beyond the duration of the voyage, and that question, so far as this Court is concerned, remains an open one. The reasons underlying the rule to which reference must be made in defining it, are those enumerated in the classic passage by Mr. Justice Story in Harden v. Gordon, Fed.Cas. No. 6047 (C.C.): The protection of seamen, who, as a class are poor, friendless and improvident from the hazards of illness and abandonment while ill in foreign ports; the inducement to masters and owners to protect the safety and health of seamen while in service; the maintenance of a merchant marine for the commercial service and maritime defense of the nation by inducing men to accept employment in an arduous and perilous service.

"It is plain that in many cases these purposes will not be accomplished if the owner's duty to furnish maintenance and cure ends with the voyage. If the injury or illness outlasts it, the seaman may still be left helpless and uncared for in a foreign port. Even if he is returned to the home port the inducement to the owner to care for the health and safety of seamen during the voyage and the inducement to seamen to take the necessary risks of a hazardous calling will be materially lessened. The chances of their prompt restoration to a service whose preservation is in the public interest, will be diminished if the right to maintenance and cure ends with the voyage.

"Tacit recognition is accorded these considerations in the great number of cases in the lower federal courts sustaining the right to maintenance and cure for a reasonable time after the voyage—'reasonable time' being appraised with reference to the special circumstances of each case. The Bouker No. 2, supra, 2 Cir., 241 F. 831, at page 835, and cases cited at page 834. It is true that in most of these cases the efficient cause of the injury or illness was some proven act of the seaman in the service of the ship, but there are others in which it was deemed enough that he was incapacitated when subject to the call of duty as a seaman, and that his incapacity continued after the voyage had ended. The Bouker No. 2, supra, 835; The Wensleydale, supra [D. C., 41 F. 829].

"We accept as supported by evidence, the finding of the District Court that respondent's disease and the amputations which he suffered were not caused by the injury to his foot. But we think that even in such a case, whether the seaman is at home or abroad, his right to maintenance and cure may outlast the voyage. The policy underlying the obligation, so cogently stated by Justice Story in Harden v. Gordon, supra, and the liberality with which admiralty courts have traditionally interpreted rules devised for the benefit and protection of seamen who are its wards, Robertson v. Baldwin, 165 U.S. 275, 287, 17 S.Ct. 326, 41 L.Ed. 715; Cortes v. Baltimore Insular Line, supra, 287 U.S. 367, at page 377, 53 S.Ct. 173, 176, 77 L.Ed. 368; The Arizona v. Anelich, 298 U.S. 110, 123, 56 S.Ct. 707, 711, 80 L.Ed. 1075, call for some extension of the duty beyond the term of service. The practical inconvenience and the attendant danger to seamen in the application of a rule which would encourage the attempt by master or owner to determine in advance of any maintenance and cure, whether the illness was caused by the employment, are manifest.

"* * * * * * * * *

"The seaman's recovery must therefore be measured in each case by the reasonable cost of that maintenance and cure to which he is entitled at the time of trial, including, in the discretion of the court, such amounts as may be needful in the immediate future for the maintenance and cure of a kind and for a period which can be definitely ascertained."

The decree of the district court is affirmed.