266 F.2d 125
 Stephen PRINDES, Appellant,
v.
THE S.S. AFRICAN PILGRIM, her boats, engines, tackle, apparel, etc., T. K. Tonnesen, a non-resident, individually, and as Master, and Farrell Lines, Inc., a foreign corporation, as owner and/or operator of the Steamship African Pilgrim, Appellees.
 No. 7826.
 United States Court of Appeals Fourth Circuit.
 Argued April 13, 1959.
 Decided May 1, 1959.
 
 Burt M. Morewitz, Newport News, Va. (David E. Morewitz, Newport News, Va., on the brief), for appellant.
 Charles R. Dalton, Jr., Norfolk, Va. (Seawell, McCoy, Winston & Dalton, Norfolk, Va., on the brief), for appellees.
 Before SOBELOFF, Chief Judge, SOPER, Circuit Judge, and BOREMAN, District Judge.
 SOBELOFF, Chief Judge.
 
 
 1
 Prindes, an American seaman, signed on at New York for a foreign voyage as a member of the crew of the S.S. African Pilgrim, an American vessel. While the vessel was docked at Monrovia, Liberia, on January 28, 1956, Prindes went ashore with leave. When Prindes left the ship, no sailing time had been posted, but he testified, without contradiction, that he was told by the officer on deck that the ship would probably not sail till the following day. A provision in the union agreement then in force required the ship's sailing time to be posted eight hours before the scheduled sailing. The sailing board, listing 9:00 p.m. as sailing time, presumably was posted for the prescribed eight hours but only after Prindes had gone ashore. At 9:00 p.m. Prindes returned to the ship, and it sailed one hour later. The ship's master logged Prindes $20.96, two days' pay, in the belief that this was authorized by the union agreement which required a seaman to come aboard at least one hour before the posted sailing time.[1]
 
 
 2
 On the ship's return to New York on February 9, 1956, Prindes was offered $236.98, representing his wages minus the logged pay. Insisting that the logging of two days' pay was unjust, Prindes refused to sign the wage voucher because it called for a mutual release of all claims. That Prindes was refused any payment unless he would sign the release is borne out by the testimony of the ship's paymaster that Prindes could receive the net wages "only when he presents himself to the Shipping Commissioner and signs the mutual releases."
 
 
 3
 One year and five months later, on July 22, 1957, Prindes filed suit for the claimed wages and for the statutory liquidated damages under 46 U.S.C.A. § 596,[2] for the ship's refusal to pay at least the wages admittedly due, $236.98. The District Judge upheld the ship's logging of two days' pay, and denied the damage claim, but ordered the $236.98, plus certain transportation allowances, to be paid Prindes.
 
 I.
 
 4
 The first question on this appeal is whether Prindes was properly logged for arriving late on board ship. The defendants' contention is that failure to be aboard one hour before posted sailing time not only violated the union contract[3] but also the "absence without leave" provision of 46 U.S.C.A. § 701.[4]
 
 
 5
 In our view neither the contract nor the statute authorized the deduction of two days' pay. As we read the contract with the union, if the ship calls upon it for a replacement for the tardy seaman, the latter is obligated for two days' pay to such replacement. The contract, however, authorizes no deduction where, as in this instance, no replacement is asked for or supplied. Nor under the statute may the penalty be imposed when a seaman leaves the ship with permission and is led by the deck officer to believe that he need not return that day, as Prindes testified without contradiction.
 
 II.
 
 6
 Even if the logging penalty were proper, Prindes is entitled to liquidated damages for withholding of the undisputed part of his wages (total wages minus logged pay) until he would sign a release. It is well settled that a seaman is entitled to double wages or "waiting time" under 46 U.S.C.A. § 596, if wages concededly due are tendered only upon condition that he will release disputed claims. Mandelin v. Kenneally, 4 Cir., 1926, 11 F.2d 344 is almost identical to the case at bar. There, the master had fined several seamen for dereliction of duty and misconduct and deducted the fines from their total wages due, and refused to pay the reduced amounts unless the seamen would agree to accept such net sums in full settlement. The seamen refused. This Court held that, even though the fines were proper, the master could not impose the condition. In allowing the double wage penalty, it was said:
 
 
 7
 "Assignments 4 and 5 present the question of the right of the respondent to withhold the amounts admittedly due libelants at the end of their voyage on the 15th of November, 1924, at Newport News, Va., unless libelants would accept the same upon the conditions imposed by respondent. This the respondent could not do, as it constituted neither a payment of the wages nor a lawful tender of the amount due, but, on the contrary, a proffer of a future lawsuit respecting the same. The fact that, in the litigation that followed in this particular case, the court sustained respondent's claims to withhold the fines and penalties imposed, would not warrant the imposition of any such condition or penalty as was sought to be imposed. The only effect of libelants' accepting the payment of the wages upon the conditions prescribed would have been to surrender their claims entirely."
 
 
 8
 This proposition is reiterated in The Lake Gaither, 4 Cir., 1930, 40 F.2d 31, where, when the seaman declared his purpose to sue the shipping company for alleged injuries, the master refused to pay the seaman's wages unless he would sign a receipt acknowledging that he had not contracted any illness or been injured during the voyage; and in Forster v. Oro Navigation Company, D.C.D.S. N.Y.1954, 128 F.Supp. 113, where tender of payment was conditioned upon the seaman signing off the ship "by mutual consent." See also The Corapeak, 4 Cir., 1931, 46 F.2d 262.
 
 
 9
 The cases relied on by the shipowner are not in point. In Trent v. Gulf Pacific Lines, D.C.S.D.Tex.1930, 42 F.2d 903, the ship's cook was wrongfully discharged and his pay tendered, but the cook refused to accept the money. There the court denied double recovery since the wages had been tendered, and there is no intimation in the opinion that the tender was conditional or that a release was demanded. In Gold v. Matson Nav. Co., 9 Cir., 1934, 73 F.2d 808, the ship refused to pay because the seaman's right to any money at all was in bona fide dispute, in contrast to the case at bar, where the $236.98 was not in dispute but conceded to be due. Pikna v. The Telfair Stockton, 4 Cir., 1949, 174 F.2d 472, denied double wage recovery because the seamen did not even present themselves in the pay line. The shipowner points to the following language in The Fletero v. Arias, 4 Cir., 1953, 206 F.2d 267, 274: "A controversy as to the balance due, if reasonable, might have justified the failure to pay and thus have avoided the penalty." We stand by the doctrine but deny its applicability here, where the controversy is limited to the two days' pay, and there is no controversy as to the balance.
 
 
 10
 The purpose of the statute is to shield seamen against pressure to release claims, even ill-supported claims, by withholding from them sums as to which their right is not in dispute. The shipowner argues that Prindes could have signed the release and protected his claim for the logged pay by adding the words "under protest" to the release. However, there is no showing that Prindes was offered this alternative, and there is no indication that it would have been acceptable to the paymaster.
 
 III.
 
 11
 Prindes claims that the statute entitles him to double pay for the entire period from the required pay-off date, February 10, 1956, till October, 1958, thirty-two months later, (and fifteen months after suit was filed) when the $236.98 was paid into court by the ship-owner. Such reading of the statute is not reasonable and is not required. The period during which the penalty accumulates is to be determined by the equities of the particular case, Mavromatis v. United Greek Shipowners Corporation, 1 Cir., 1948, 179 F.2d 310, 316; Forster v. Oro Navigation Company, D.C.S.D. N.Y.1954, 128 F.Supp. 113, 116; Mystic S.S. Co. v. Stromland, 4 Cir., 1927, 20 F.2d 342. It was stated by counsel in open court that before suit was filed they negotiated a settlement for $650 to include all sums due for wages, damages, maintenance and transportation. This Prindes rejected, not because he was dissatisfied with the amount but because he insisted that the ship's record of the penalty should be corrected. We are not in a position to alter the ship's records, but in our opinion the result declared here gives the plaintiff equivalent relief and the substance of what he seeks. We think that in the circumstances it is just to make his award $20.96 for the logged wages, plus $650 as penalty, in addition to the $236.98 undisputed wages and $42.06 transportation allowance drawn down by him from the registry of the District Court.
 
 
 12
 Reversed and remanded for entry of judgment in accordance with this opinion.
 
 
 
 Notes:
 
 
 [1]
 Section 9 of the union contract provides:
 "Time for Being Aboard.
 "All members of the Unlicensed Personnel shall be aboard the vessel and ready for sea at least one hour before the scheduled sailing time. In the event any member of the Unlicensed Personnel fails to comply with this provision, the Company shall call the Union and the Union shall furnish a replacement. If the original member reports after the Company has called for a replacement, the man sent by the Union as such replacement, shall receive two (2) days' pay, which two (2) days' pay shall be paid by the member who was late in reporting for duty."
 
 
 [2]
 46 U.S.C.A. § 596:
 "Time for payment.
 "The master or owner of any vessel making coasting voyages shall pay to every seaman his wages within two days after the termination of the agreement under which he was shipped, or at the time such seaman is discharged, whichever first happens; and in case of vessels making foreign voyages, or from a port on the Atlantic to a port on the Pacific, or vice versa, within twenty-four hours after the cargo has been discharged, * * * whichever first happens; and in all cases the seaman shall be entitled to be paid at the time of his discharge on account of wages a sum equal to one-third part of the balance due him. Every master or owner who refuses or neglects to make payment in the manner hereinbefore mentioned without sufficient cause shall pay to the seaman a sum equal to two days' pay for each and every day during which payment is delayed beyond the respective periods, which sum shall be recoverable as wages in any claim made before the court; but this section shall not apply to masters or owners of any vessel the seamen of which are entitled to share in the profits of the cruise or voyage. This section shall not apply to fishing or whaling vessels or yachts."
 
 
 [3]
 Supra, footnote 1
 
 
 [4]
 "§ 701. Various offenses; penalties
 "Whenever any seaman who has been lawfully engaged or any apprentice to the sea service commits any of the following offenses, he shall be punished as follows:
 * * * * *
 "Second. For neglecting or refusing without reasonable cause to join his vessel or to proceed to sea in his vessel, or for absence without leave at any time within twenty-four hours of the vessel's sailing from any port, either at the commencement or during the progress of the voyage, or for absence at any time without leave and without sufficient reason from his vessel and from his duty, not amounting to desertion, by forfeiture from his wages of not more than two days' pay or sufficient to defray any expenses which shall have been properly incurred in hiring a substitute."